ABRAMSON & DENENBERG, P.C.
BY:  ALAN E. DENENBERG, ESQUIRE
IDENTIFICATION NO:  54161
1315 WALNUT STREET, SUITE 500
PHILADELPHIA, PA 19107
(215) 546-1345

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL NEWBERG | : |
| 418 WESNER AVENUE | : CIVIL ACTION |
| GLENOLDEN, PA 19036 | : |
|     Plaintiff | : NO. 2:22-cv-00304 |
| | : |
|     v. | : JURY TRIAL DEMANDED |
| | : |
| PENNSYLVANIA DEPARTMENT OF | : |
| CORRECTIONS | : |
| 1920 TECHNOLOGY PARKWAY | : |
| MECHANICSBURG, PA 17050 | : |
|     and | : |
| JAMIE SORBER | : |
| SUPERINTENDENT SCI PHOENIX | : |
| 1200 MOKYCHIC ROAD | : |
| COLLEGEVILLE, PA 19426 | : |
|     and | : |
| STEPHEN WIENER, M.D. | : |
| MEDICAL DIRECTOR SCI PHOENIX | : |
| 1200 MOKYCHIC ROAD | : |
| COLLEGEVILLE, PA 19426 | : |
|     and | : |
| SCI PHOENIX CORRECTIONAL OFFICERS | : |
| JANE/JOHN DOE #'s 1-15 | : |
| 1200 MOKYCHIC ROAD | : |
| COLLEGEVILLE, PA 19426 | : |
|     and | : |
| MHM SERVICES, INC. a/k/a MHM HEALTH | : |
| PROFESSIONALS LLC a/k/a MHM | : |
| CORRECTIONAL SERVICES, LLC d/b/a | : |
| CENTURION HEALTH *incorrectly identified as* | : |
| CORRECT CARE SOLUTIONS | : |
| 1593 SPRING HILL RD, SUITE 600 | : |
| VIENNA, VA  22182-2252 | : |
|     and | : |
| WELLPATH, INC. | : |

| | |
|---|---|
| **1200 MOKYCHIC ROAD** | : |
| **COLLEGEVILLE, PA 19426** | : |
| and | : |
| **SCI PHOENIX HEALTH CARE PROVIDER** | : |
| **JENNIFER WARD** | : |
| **1200 MOKYCHIC ROAD** | : |
| **COLLEGEVILLE, PA 19426** | : |
| and | : |
| **SCI PHOENIX HEALTH CARE PROVIDER** | : |
| **CHRISTINE STICKNEY** | : |
| **1200 MOKYCHIC ROAD** | : |
| **COLLEGEVILLE, PA 19426** | : |
| and | : |
| **SCI PHOENIX HEALTH CARE PROVIDER** | : |
| **J. FERNANDEZ** | : |
| **1200 MOKYCHIC ROAD** | : |
| **COLLEGEVILLE, PA 19426** | : |
| and | : |
| **SCI PHOENIX HEALTH CARE PROVIDER** | : |
| **YUEHENG HAN** | : |
| **1200 MOKYCHIC ROAD** | : |
| **COLLEGEVILLE, PA 19426** | : |
| and | : |
| **MHM SERVICES, INC/WELLPATH, INC.** | : |
| **NURSES JANE/JOHN DOE #'s 1-15** | : |
| **1200 MOKYCHIC ROAD** | : |
| **COLLEGEVILLE, PA 19426** | : |
| and | : |
| **MHM SERVICES/WELLPATH, INC.** | : |
| **DR. JANE AND JOHN DOE #'s 1-5** | : |
| **1200 MOKYCHIC ROAD** | : |
| **COLLEGEVILLE, PA 19426** | : |

_____

## AMENDED COMPLAINT

### I.    INTRODUCTION

1.    Plaintiff, Daniel Newberg, brings this action for damages pursuant to

to 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment and/or the Eighth

Amendment of the United States Constitution as a result of the serious injuries he sustained

when he attempted to commit suicide while incarcerated at the State Correctional Institution at

Phoenix (hereinafter "SCI Phoenix").

## II.    JURISDICTION AND VENUE

2.    The court has jurisdiction over the Federal Law Claims pursuant to 28 U.S.C.

§1331 and §1343 and jurisdiction over the State Law Claims pursuant to 28 U.S.C. § 1367 and the

principals of pendant and ancillary jurisdiction.

3.    Venue is proper under 28 U.S.C. §1391(b) because the cause of action upon which the

complaint is based arose in Montgomery County, Pennsylvania, which is in the Eastern District of

Pennsylvania.

## III.    PARTIES

4.    The Pennsylvania Department of Corrections (hereinafter "Pa. DOC") is the

governmental entity responsible for overseeing the Pennsylvania prison system, including SCI

Phoenix.

5.    Defendant, Jamie Sorber, was at all material times the Superintendent of SCI Phoenix

and was responsible for overseeing all aspects of the prison, including the medical care and safety of

inmates such as the Plaintiff, Daniel Newberg. Defendant Sorber was at material times acting under

the color of state law, in the course and scope of his employment and is being sued in his individual

capacity.

6.    Defendant Dr. Stephen Wiener was at all material times the Medical Director at SCI

Phoenix and was responsible for implementing all policies/practices/procedures related to the medical

care at SCI Phoenix, and for directly overseeing the medical care and treatment of inmates including

the Plaintiff, Daniel Newberg. Defendant Dr. Wiener was at material times acting under the color of

state law, in the course and scope of his employment and is being sued in his individual capacity.

7.      Defendants SCI Phoenix Correctional Officers #'s 1-15 (hereinafter "C.O.'s) are adult individual residents of the Commonwealth of Pennsylvania, who at all material times were employed by the Pa DOC and/or SCI Phoenix.

8.      Defendants C.O.'s #'s 1-15 acted within the course and scope of their employment, under color of state law and pursuant to the customs, policies and/or practices of Pa DOC and/or SCI Phoenix, and/or Superintendent Sorber and/or Medical Director Dr. Wiener, and are being sued in their individual capacities.

9.      Defendant MHM Services, Inc. a/k/a MHM Health Professionals LLC a/k/a MHM Correctional Services, LLC d/b/a Centurion Health (hereinafter "MHM"), which was formerly incorrectly identified as Correct Care Solutions, has its primary location/principal place of business as set forth above. At all times material, MHM had a contract with the Pa. DOC and/or SCI Phoenix and/or Wellpath, Inc. to hire, train and supervise medical/psychiatric personnel and to establish related procedures and policies for SCI Phoenix, and to provide constitutionally adequate medical/psychiatric care to persons incarcerated at SCI Phoenix, and to protect those inmates from suicide, including the Plaintiff, Daniel Newberg.

10.     At times material hereto, Defendant, MHM acted under of color of state law, pursuant to contract, in joint participation with Defendants Pa. DOC and/or SCI Phoenix and/or Wellpath, Inc. to provide medical/psychiatric care to inmates at SCI Phoenix and were fulfilling a traditional governmental function.

11.     At all material times, Defendant, MHM, acted or failed to act by and through its/their agents, servants, and/or employees, then and there acting within the course and scope of their agency or employment.

12.     Defendant Wellpath, Inc. is a corporation with its primary location as set forth above. At all times material, Wellpath, Inc., had a contract with the Pa. DOC and/or SCI Phoenix hire, train and supervise medical/psychiatric personnel and to establish related procedures and policies for SCI Phoenix, and to provide constitutionally adequate medical care to persons incarcerated at SCI Phoenix, and to protect those inmates from suicide, including the Plaintiff, Daniel Newberg.

13.     At times material hereto, Defendant, Wellpath, Inc. acted under of color of state law, pursuant to contract, in joint participation with Defendants Pa. DOC and/or SCI Phoenix to provide medical care to inmates at SCI Phoenix and were fulfilling a traditional governmental function.

14.     At all material times, Defendant, Wellpath, Inc. acted or failed to act by and through its/their agents, servants, and/or employees, then and there acting within the course and scope of their agency or employment.

15.     At all material times, Defendant, Jennifer Ward, was a mental health care provider at SCI Phoenix, employed by the DOC and/or MHM and/or Wellpath, Inc., and was responsible for providing medical and/or psychiatric care to inmates at SCI Phoenix, including the Plaintiff, Daniel Newberg.

16.     Defendant Ward was at all material times acting under color of state law, pursuant to the customs/practices/polices of the Pa. DOC and/or SCI Phoenix and/or MHM and/or Wellpath, Inc. and is being sued in her individual capacity.

17.     At all material times, Defendant Christine Stickney was a mental health care provider at SCI Phoenix, employed by the DOC and/or MHM and/or Wellpath, Inc., and was responsible for providing medical and/or psychiatric care to inmates at SCI Phoenix, including the Plaintiff, Daniel Newberg.

18.     Defendant Stickney was at all material times acting under color of state law, pursuant to the customs/practices/polices of the Pa. DOC and/or SCI Phoenix and/or MHM and/or Wellpath, Inc. and is being sued in her individual capacity.

19.     At all material times, Defendant, J. Fernandez, was a mental health care provider at SCI Phoenix, employed by the DOC and/or MHM and/or Wellpath, Inc., and was responsible for providing medical and/or psychiatric care to inmates at SCI Phoenix, including the Plaintiff, Daniel Newberg.

20.     Defendant Fernandez was at all material times acting under color of state law, pursuant to the customs/practices/polices of the Pa. DOC and/or SCI Phoenix and/or MHM and/or Wellpath, Inc. and is being sued in his individual capacity.

21.     At all material times, Defendant, Yueheng Han, was a mental health care provider at SCI Phoenix, employed by the DOC and/or MHM and/or Wellpath, Inc., and was responsible for providing medical and/or psychiatric care to inmates at SCI Phoenix, including the Plaintiff, Daniel Newberg.

22.     Defendant Han was at all material times acting under color of state law, pursuant to the customs/practices/polices of the Pa. DOC and/or SCI Phoenix and/or MHM and/or Wellpath, Inc. and is being sued in his individual capacity.

23.     Defendants MHM/Wellpath, Inc. Jane/John Doe Nurses #'s 1-15 (hereinafter "HMH/Wellpath Nurses") were responsible for providing medical and/or psychiatric care to inmates at SCI Phoenix, including the Plaintiff, Daniel Newberg.

24.     Defendants MHM/Wellpath Nurses #'s 1-15 were at all material times acting under color of state law, pursuant to the customs/practices/polices of the Pa. DOC and/or SCI Phoenix and/or HMH/Wellpath, Inc. and are being sued in their individual capacities.

25.     Defendants MHM/Wellpath, Inc.'s Doctors Jane/John Does #'s1-5 (hereinafter "Dr.'s") were at all times material hereto responsible for providing medical and/or psychiatric care to inmates at SCI Phoenix, including the Plaintiff, Daniel Newberg.

26.     Defendants Dr's Jane/John Doe #'s 1-5 were at times material hereto acting under color of state law, within the course and scope of their employment/contract and are being sued in their individual capacity.

## IV.   OPERATIVE FACTS

27.     The Plaintiff was on the prescription medications Lexapro, Wellbutrin and Seroquel for mental health issues, including bipolar disorder, depression and prior suicide attempts, which included an attempt to hang himself in his basement in 2019 shortly before he was incarcerated.

28.     On January 14, 2020, the Plaintiff was sent to George Hill Correctional Institution, where he was given two of the three medicines he required on a daily basis, Lexapro and Wellbutrin.

29.     On January 17, 2020, the Plaintiff transferred to SCI Phoenix.

30.     At intake, Plaintiff informed Defendants Ward and/or Stickney and/or Fernandez and/or Han and/or MHM/Wellpath Nurses #'s 1-15 and/or Defendants Dr's Jane/John Doe #'s 1-5 that he suffered from bipolar disorder/depression, that he was prescribed Lexapro, Wellbutrin and Seroquel for his condition, and that if did not receive the aforementioned medicines on a daily basis he became suicidal, and that he had a history of attempted suicides.

31.     At intake, Plaintiff informed Defendants Ward and/or Stickney and/or Fernandez and/or Han and/or MHM/Wellpath Nurses #'s 1-15 and/or Defendants Dr,'s Jane/John Doe #'s

1-5 that he was depressed, anxious, had been committed for mental health issues, and provided details of his prior suicide attempts, including his most recent attempt.

32.     At that time, Plaintiff was informed by Defendants Ward and/or Stickney and/or Fernandez and/or Han and/or MHM/Wellpath Nurses #'s 1-15 and/or Defendants Dr's Jane/John Doe #'s 1-5 that they could not give him Lexapro, Wellbutrin or Seroquel until he was seen by the prison psychiatrist.

33.     In response, Plaintiff requested to see the prison psychiatrist immediately, but was informed by Defendants Ward and/or Stickney and/or Fernandez and/or Han and/or MHM/Wellpath Nurses #'s 1-15 and/or Defendants Dr,'s Jane/John Doe #'s 1-5 that it would be days before he could see a prison psychiatrist.

34.     Despite knowing that Plaintiff had serious mental health issues, that included a history of suicide attempts, and despite knowing that Plaintiff became suicidal if he did not take his Lexapro, Wellbutrin and Seroquel on daily basis, and that he was not being given the medicine until he saw the prison psychiatrist, Defendants Ward and/or Stickney and/or Fernandez and/or Han and/or MHM/Wellpath Nurses #'s 1-15 and/or Defendants Dr,'s Jane/John Doe #'s 1-5, ignored Plaintiff's substantial risk of suicide, and his serious medical needs, by failing to immediately schedule him to see the prison psychiatrist and/or failing to give him his needed medicines and/or failing to put him suicide watch.

35.     Defendants Ward and/or Stickney and/or Fernandez and/or Han and/or MHM/Wellpath Nurses #'s 1-15 and/or Defendants Dr's Jane/John Doe #'s 1-5 intentionally and/or with deliberate indifference, ignored Plaintiff's substantial suicide risk and did not provide him adequate medication, or psychiatric/psychological care and treatment, despite the

fact that the need for such medical care and treatment was obvious, and would have been obvious to a lay person.

36.      Defendants Ward and/or Stickney and/or Fernandez and/or Han and/or MHM/Wellpath Nurses #'s 1-15 and/or Defendants Dr's Jane/John Doe #'s 1-5 knew or should have known that Plaintiff was a substantial suicide risk, but failed to place him on suicide watch, provide him adequate medication and/or psychiatric/ psychological care and treatment or any other protection to ensure his safety and protect him from the substantial risk of suicide.

37.      Despite his substantial risk of suicide, Plaintiff was assigned to general population and placed on the block.

38.      While on the block, Plaintiff informed Defendants C.O.'s #'s 1-15 on a nightly basis that he needed to see the Doctor, he was bipolar and needed his medicine, and that he was becoming suicidal.

39.      Plaintiff asked Defendants C.O.'s #'s 1-15 what he needed to do to get help, and was told that there was nothing that could be done, he would just have to wait until he saw the Doctor, and despite Plaintiff's repeated pleas for help, his deteriorating mental health condition, which was obvious even to a lay person, Defendants C.O.'s #'s 1-15 ignored Plaintiff's pleas and requests for help, and failed to communicate Plaintiff's pleas/requests to any of the medical providers or otherwise provide the Plaintiff the help he needed.

40.      Plaintiff also informed Defendants Ward and/or Stickney and/or Fernandez and/or Han and/or MHM/Wellpath Nurses #'s 1-15 who came onto the block that his condition was getting worse, and that he needed to see the Doctor and get his medicines because he was becoming suicidal.

41.     Defendants Ward and/or Stickney and/or Fernandez and/or Han and/or MHM/C.O.'s #'s 1-15 and/or Wellpath Nurses #'s 1-15 ignored the Plaintiff's repeated pleas for medical attention and help, and ignored the fact that Plaintiff was visibly deteriorating, despite their knowledge that Plaintiff had a history of suicide attempts, and became suicidal when he did not have his medication, and that he had not had his medication for days.

42.     Defendants Ward and/or Stickney and/or Fernandez and/or Han and/or MHM/Wellpath Nurses #'s 1-15 and/or Defendants C.O.'s #'s 1-15 intentionally and with deliberate indifference, ignored Plaintiff's substantial suicide risk and his serious medical condition by ignoring his repeated pleas for medical assistance and help, and his deteriorating condition, despite the fact that the need for such medical care and treatment was obvious, and would have been obvious to a lay person.

43.     Despite their knowledge that Defendant was a substantial risk of suicide, and that he needed to see a Doctor and receive his medications for his serious mental health issues, six days after he had been committed to SCI Phoenix, he still had not seen a Doctor and had not received his medicines, and during this time period he could not sleep or eat, was becoming very depressed, and he communicated all of this to Defendants Ward and/or Stickney and/or Fernandez and/or Han and/or C.O.'s #'s 1-15 and/or MHM/Wellpath Nurses #'s 1-15, who ignored his pleas, and his condition, which was visibly deteriorating and would have been obvious even to a lay person.

44.     Defendants Superintendent Sorber and/or Medical Director Dr. Wiener and/or MHM/Wellpath, Inc. knew or should have known of Plaintiff's condition, and ignored his pleas for medical care and treatment because they had a policy/practice/custom of denying medicines to persons who needed them, in an effort to save money, and also out of the belief that inmates

with mental health issues should just tough it out, and they would be okay without their medicines or medical attention.

45.     On January 23, 2020, just six days after he was transferred to SCI Phoenix, the Plaintiff attempted to commit suicide by jumping of the second floor tier onto the concrete floor on the first tier.

46.     As a result of Defendants Superintendent Sorber's and/or Medical Director Dr. Wiener's and/or Defendants Ward and/or Stickney and/or Fernandez and/or Han and/or C.O.'s #'s 1-15 and/or MHM/Wellpath Nurses #'s 1-15 and/or Dr.'s Jane/John Doe's deliberate indifference to Plaintiff's substantial risk of suicide and serious medical needs, the Plaintiff suffered serious injury, including a shattered right elbow, shattered left tibia, broken left hand/wrist/elbow, broken right foot, broken right orbital bone in the face, broken nose, and bruised ribs.

47.     As a result of Defendants Superintendent Sorber's and/or Medical Director Dr. Wiener's and/or Defendants C.O.'s #'s 1-15 and/or Ward and/or Stickney and/or Fernandez and/or Han and/or MHM/Wellpath Nurses #'s 1-15 and/or Dr.'s Jane/John Doe's deliberate indifference to Plaintiff's substantial risk of suicide and serious medical needs, the Plaintiff was required to undergo surgery on his tibia, right elbow and left hand/wrist, and will need additional surgeries.

48.     As a result of Defendants Superintendent Sorber's and/or Medical Director Dr. Wiener's and/or Defendants Defendants C.O.'s #'s 1-15 and/or Wellpath Nurses #'s 1-15 and/or Dr.'s Jane/John Doe's and/or Ward and/or Stickney and/or Fernandez and/or Han and/or MHM/Wellpath, Inc.'s deliberate indifference to Plaintiff's substantial risk of suicide and serious

medical needs, the Plaintiff spent a month in the hospital and incurred over $657, 471.14 in

medical expense, and will be required to spend more int the future.

49.     As a result of Defendants Superintendent Sorber's and/or Medical Director Dr.

Wiener's and/or Defendants Defendants C.O.'s #'s 1-15 and/or Wellpath Nurses #'s 1-15 and/or

Dr.'s Jane/John Doe's and/or Ward and/or Stickney and/or Fernandez and/or Han and/or

MHM//Wellpath, Inc.'s deliberate indifference to Plaintiff's substantial risk of suicide and

serious medical needs, the Plaintiff suffered mental anguish, emotional distress, loss of

enjoyment of life, humiliation, and incurred expenses, and will continue to incur expenses in the

future.

50.     Defendants Superintendent Sorber's and/or Medical Director Dr. Wiener's and/or

Defendants C.O.'s #'s 1-15 and/or Wellpath Nurses #'s 1-15 and/or Dr.'s Jane/John Doe's and/or

Ward and/or Stickney and/or Fernandez and/or Han and/or MHM/Wellpath, Inc.'s act and

omissions violated the Plaintiff's rights under the Due Process Clause and/or Eighth Amendment

of the Unites States Constitution.

## COUNT I - 42 U.S.C. 1983
## DUE PROCESS CLAUSE/EIGHTH AMENDMENT--DELIBERATE INDIFFERENCE TO KNOWN RISK OF SUICIDE
## PLAINTIFF v. C.O.'S #1-15, MHM/WELLPATH NURSES #1-15, DR.'S JANE/JOHN DOE #1-5, JENNIFER WARD, CHRISTINE STICKNEY, J. FERNANDEZ, YUEHING HAN, SUPERINTENDENT SORBER AND MEDICAL DIRECTOR DR. WIENER

51.     All of the preceding paragraphs are incorporated by reference as if more fully set-

forth herein.

52.     As alleged above, Defendants C.O.'s #'s 1-15 and/or Wellpath, Inc. Nurses #'s 1-

15 and/or Jane/John Doe Dr.'s #'s 1-5 and/or Ward and/or Stickney and/or Fernandez and/or

Han and/or Superintendent Sorber's and/or Medical Director Dr. Wiener  knew that Plaintiff was

particularly vulnerable to suicide and that there was a strong likelihood that he would attempt

suicide, and notwithstanding this knowledge of a significant risk to Plaintiff's health and safety, they were deliberately indifferent by failing to take any action or precaution to prevent Plaintiff from jumping off the second tier, such as placing him on suicide watch or providing him adequate psychiatric care and treatment and his needed medicines.

53.     Plaintiff's vulnerability to suicide was known and obvious as he had informed them of that risk on intake, and continued to inform them while housed in the block.

54.     As the direct and proximate result of the above deliberate indifference of Defendants C.O.'s #'s 1-15 and/or Wellpath, Inc. Nurses #'s 1-15 and/or Jane/John Doe Dr.'s #'s 1-5 and/or Ward and/or Stickney and/or Fernandez and/or Han and/or Superintendent Sorber's and/or Medical Director Dr. Wiener the Plaintiff attempted to commit suicide and sustained serious injury.

55.     The above described actions of Defendants C.O.'s #'s 1-15 and/or Wellpath, Inc. Nurses #'s 1-15 and/or Jane/John Doe Dr.'s #'s 1-5 and/or Ward and/or Stickney and/or Fernandez and/or Han and/or and/or Superintendent Sorber's and/or Medical Director Dr. Wiener in their individual capacities, were so malicious, intentional and reckless and displayed such a reckless indifference to the Plaintiff's rights and well-being, that the imposition of punitive damages is warranted.

**WHEREFORE**, pursuant to 42 U.S.C. §1983 and §1988, Plaintiff demands compensatory and punitive damages against the Defendants C.O.'s #'s 1-15 and/or Wellpath, Inc. Nurses #'s 1-15 and/or Jane/John Doe Dr.'s #'s 1-5 and/or Ward and/or Stickney and/or Fernandez and/or Han and/or and/or Superintendent Sorber's and/or Medical Director Dr. Wiener jointly and/or severally, in an amount sufficient to fully and adequately compensate the Plaintiff and punish and deter the defendants, plus interest, costs, attorney's fees and all other appropriate relief.

**COUNT II - 42 U.S.C. §§ 1983 AND 1988**
**DUE PROCESS CLAUSE/EIGHTH AMENDMENT --INADEQUATE MEDICAL CARE**
**PLAINTIFF v. WELLPATH NURSES #1-15, DR.'S JANE/JOHN DOE #1-5, JENNIFER**
**WARD, CHRISTINE STICKNEY, J. FERNANDEZ, YUEHING HAN**

56.     All of the preceding paragraphs are incorporated by reference as if more fully set-forth herein.

57.     Defendants Wellpath Nurses #'s 1-15 and/or Dr.'s Jane/John Doe #'s 1-5 and/or Ward and/or Stickney and/or Fernandez and/or Han were professional health care providers who were responsible for providing medical care and treatment to the Plaintiff while he was incarcerated at SCI Phoenix.

58.     Defendants Wellpath Nurses #'s 1-15 and/or Dr.'s Jane/John Doe #'s 1-5 and/or Ward and/or Stickney and/or Fernandez and/or Han knew that Plaintiff's bipolar disorder, need for psychiatric care and treatment, need for specific medicines and his vulnerability to suicide constituted a serious medical need, yet they ignored the Plaintiff's serious medical need, and were deliberately indifferent to these needs by failing to provide the Plaintiff with his needed medicines and care, including failing to immediately schedule him to see a Psychiatrist, who could make an assessment of his mental health condition and risk of suicide and who could prescribe the medicines that he had been taking and needed to prevent him from becoming depressed and suicidal.

59.     As the direct and proximate result of the above deliberate indifference of Defendants Wellpath, Inc. Nurses #'s 1-15 and/or Jane/John Doe Dr.'s #'s 1-5 and/or Ward and/or Stickney and/or Fernandez and/or Han the Plaintiff attempted to commit suicide and sustained serious injury.

60.     The above described actions of Defendants Wellpath, Inc. Nurses #'s 1-15 and/or Jane/John Doe Dr.'s #'s 1-5 and/or Ward and/or Stickney and/or Fernandez and/or Han in their

individual capacities, were so malicious, intentional and reckless and displayed such a reckless indifference to the Plaintiff's rights and well-being, that the imposition of punitive damages is warranted.

**WHEREFORE**, pursuant to 42 U.S.C. §1983 and §1988, Plaintiff demands compensatory and punitive damages against the Defendants Wellpath, Inc. Nurses #'s 1-15 and/or Jane/John Doe Dr.'s #'s 1-5 and/or Ward and/or Stickney and/or Fernandez and/or Han, jointly and/or severally, in an amount sufficient to fully and adequately compensate the Plaintiff and punish and deter the defendants, plus interest, costs, attorney's fees and all other appropriate relief.

## COUNT III- CUSTOM AND POLICY OF UNCONSTITUTIONAL CONDUCT
### *MONELL* CLAIM
### PLAINTIFF v MHM/WELLPATH, INC.

61.    All of the preceding paragraphs are incorporated by reference as if more fully set-forth herein.

62.    The Plaintiff believes and therefore avers that the Defendants MHM/Wellpath, Inc. have adopted and maintained for many years a recognized and accepted policy, custom, and practice of condoning and/or acquiescing in the deliberate indifference to serious medical needs of citizens, arrestees, detainees and inmates, and subjecting them to the same type of treatment to which Plaintiff was subjected, which policy violates the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States/Eighth Amendment, the laws of the United States and of the Commonwealth of Pennsylvania and was in violation of 42 U.S.C. § 1983.

63.    The aforementioned unconstitutional policy, custom and practice includes failing to provide adequate policies and procedures for identifying persons who are high suicide risks, failing to have proper intervention procedures, failing to have adequate policies and procedures for addressing persons who are suicidal, failing to provide them with adequate psychiatric medical care

and treatment, and failing to place them on suicide watch. In addition, the unconstitutional policy, custom and practices includes failing to have a policy/procedure to immediately schedule a psychiatric evaluation for inmates who, like the Plaintiff, suffered from severe mental health issues, including prior suicide attempts and hospitalization, and needed to see the psychiatrist to get the medicines he needed to avoid getting depressed and becoming suicidal, when the need for such policies and procedures was obvious.

64.     The aforementioned unconstitutional policy, custom and practice is based on Defendants' desire to save money by not providing the required medical care and treatment and also a systemic belief that citizens, arrestees, detainees and prisoners are manipulative and the psychiatric needs, even where a person is suicidal, do not warrant medical care and treatment.

65.     The Plaintiff believes and therefore avers that the Defendants MHM/Wellpath, Inc. have adopted and maintained for many years a recognized and accepted policy, custom, and practice of failing to adequately train prison and medical staff employees regarding the warning signs of potential suicides, and failing to adequately train them regarding the necessary precautions to avoid suicides, and of failing to discipline employees who allow suicides to occur on their watch.

66.     The Defendants, Defendants MHM/Wellpath, Inc. have been deliberately indifferent to a citizen's right to essential medical care and safety, which deliberate indifference violates the Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States/Eighth Amendment, the laws of the United States and of the Commonwealth of Pennsylvania and was in violation of 42 U.S.C. § 1983.

67.     The Plaintiff believes and therefore avers, that at the time of the aforementioned incident, Defendants MHM/Wellpath, Inc. knew or should have known of the above described policy and that it deliberately, knowingly, and/or negligently failed to take measures to stop or limit

the policy, including, inter alia, providing proper training, supervision, and control of the officers, agents, and/or employees.

68.     By failing to take action to stop or limit the policy and/or by remaining deliberately indifferent to the systematic abuses which occurred in accordance with and as a direct and proximate result of the policy, MHM/Wellpath, Inc. condoned, acquiesced in, participated in, and perpetrated the policy in violation of the Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States/Eighth Amendment of the Constitution of the Commonwealth of Pennsylvania, the Laws of the United States and of the Commonwealth of Pennsylvania, and was in violation of 42 U.S.C. § 1983.

69.     The Plaintiff believes and therefore avers that the Defendants HMH/Wellpath, Inc. have adopted and maintained for many years a recognized and accepted policy consisting of an inadequate system of review of claims of inadequate medical care and prior suicides, as well as complaints of unsupervised detainees and inmates, which system has failed to identify instances of deliberate indifference to serious medical needs or insure that arrestee, detainees and/or prisoners serious medical needs are being met.

**WHEREFORE**, pursuant to 42 U.S.C. § 1983 and § 1988, Plaintiff demands compensatory damages against Defendants MHM/Wellpath, Inc. jointly and/or severally, in an amount sufficient to fully and adequately compensate the Plaintiff, plus interest, costs, attorney's fees and all other appropriate relief.

**COUNT IV- PENNSYLVANIA LAW**
**NEGLIGENCE**
**PLAINTIFF V. PA. DOC, HMH/WELLPATH, INC. AND**
**DR.'S JANE/JOHN DOE #'S 1-5**

70.     All preceding paragraphs are fully incorporated herein by reference.

71.     At all times relevant hereto, Defendants Pa. DOC, MHM/Wellpath, Inc.and Dr.'s Jane/John Doe #'s 1-5 had a duty to comply with generally accepted medical standards of care in their treatment of the Plaintiff.

63.     Defendants, Pa. DOC, MHM/Wellpath, Inc.and Dr.'s Jane/John Doe #'s 1-5 violated their duty of care to the Plaintiff.

64.     The Defendants' violation of their duty of care to the Plaintiff was a direct and proximate cause and a substantial factor in bringing about Plaintiff's injuries and death, as set-forth above, and accordingly Defendants are liable to Plaintiff under Pennsylvania law.

**WHEREFORE**, pursuant to Pennsylvania law, Plaintiff demands compensatory damages, Defendants Pa. DOC, MHM/Wellpath, Inc.and Dr.'s Jane/John Doe #'s 1-5 jointly and/or severally, in an amount sufficient to fully and adequately compensate the Plaintiff, plus interest, costs, attorney's fees and all other appropriate relief.


ABRAMSON & DENENBERG, P.C.


BY: _s/Alan Denenberg_____
ALAN DENENBERG, ESQUIRE

**ABRAMSON & DENENBERG, P.C.**
**BY:  ALAN E. DENENBERG, ESQUIRE**
**IDENTIFICATION NO:  54161**
**1315 WALNUT STREET, SUITE 500**
**PHILADELPHIA, PA 19107**
**(215) 546-1345**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANIEL NEWBERG** | : | |
| | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff** | : | **NO. 2:22-cv-00304** |
| | : | |
| **v.** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **PENNSYLVANIA DEPARTMENT OF** | : | |
| **CORRECTIONS** | : | |

## CERTIFICATE OF SERVICE

I, Alan Denenberg, Esquire, hereby certify that on March 21, 2022, I served a true and

correct copy of Plaintiff's Amended Complaint on all counsel of record via the Court's Electronic

Filing System (PACER).

Date: March 21, 2022                          __s/Alan Denenberg_____
                                                              ALAN DENENBERG, ESQUIRE