**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DANIEL NEWBERG** : | |
|       **Plaintiff** : | *FILED ELECTRONICALLY* |
| : | |
|     **v.** : | **CIVIL ACTION** |
| : | |
| **PENNSYLVANIA DEPARTMENT OF** : | **NO. 2:22-CV-00304** |
| **CORRECTIONS, et al.** : | |
|       **Defendants** : | |

## <u>ORDER</u>

AND NOW, this                 day of                 2022, after consideration of

Defendants, Dr. Stephen Wiener and Wellpath, LLC's Motion to Dismiss Plaintiff's Amended

Complaint and Plaintiff's Response thereto, it is hereby **ORDERED** that Defendant's Motion is

**DENIED** as to Defendant Wellpath, LLC. Plaintiff does not oppose the Motion to Dismiss

Defendant Dr. Stephen Wiener.


BY THE COURT:


_____
                                                 J.

ABRAMSON & DENENBERG, P.C.                    **ATTORNEY FOR PLAINTIFF**
BY:  ALAN DENENBERG, ESQUIRE
IDENTIFICATION NO:  54161
1315 WALNUT STREET, SUITE 500
PHILADELPHIA, PA 19107
(215) 546-1345

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DANIEL NEWBERG | : | |
| **Plaintiff** | : | |
| | : | *FILED ELECTRONICALLY* |
| v. | : | |
| | : | CIVIL ACTION |
| PENNSYLVANIA DEPARTMENT OF | : | |
| CORRECTIONS, et al. | : | NO. 2:22-CV-00304 |
| **Defendants** | : | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS DR. STEPHEN WIENER'S AND WELLPATH, LLC'S 12(B)(6) MOTION TO DISMISS THE AMENDED COMPLAINT

Plaintiff, Daniel Newberg, by and through his attorney, Alan Denenberg, Esquire, hereby

files this Response to Defendants Dr. Stephen Wiener's and Wellpath, Inc.'s 12(b)(6) Motion to

Dismiss the Amended Complaint and, pursuant to Local Federal Rule 7.1, in support thereof

incorporates by reference the attached Memorandum of Law and Exhibits as if fully set-forth

herein.

**WHEREFORE,** Plaintiff, Daniel Newberg, respectfully requests that this Court deny

Defendants' 12(b)(6) Motion to Dismiss the Amended Complaint as to Defendant Wellpath, Inc.


RESPECTFULLY SUBMITTED,


BY: s/ Alan Denenberg
ALAN DENENBERG, ESQUIRE
ATTORNEY FOR PLAINTIFF

`

**ABRAMSON & DENENBERG, P.C.**                    **ATTORNEY FOR PLAINTIFF**
**BY:  ALAN DENENBERG, ESQUIRE**
**IDENTIFICATION NO:  54161**
**1315 WALNUT STREET, SUITE 500**
**PHILADELPHIA, PA 19107**
**(215) 546-1345**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DANIEL NEWBERG** | : |
| **Plaintiff** | : |
| | : |
| **v.** | : |
| | : |
| **PENNSYLVANIA DEPARTMENT OF** | : |
| **CORRECTIONS, et al.** | : |
| **Defendants** | : |

*FILED ELECTRONICALLY*

**CIVIL ACTION**

**NO. 2:22-CV-00304**

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS DR.
STEPHEN WIENER'S AND WELLPATH, INC.'S 12(B)(6) MOTION
TO DISMISS THE AMENDED COMPLAINT**

## I.     INTRODUCTION

Defendants Dr. Stephen Wiener and Wellpath, Inc. have filed a 12(b)(6) Motion to the

Amended Complaint. Dr. Wierner was the medical director at SCI Phoenix, and is being sued in

his individual capacity in Count I of the Amended Complaint, which alleges a Deliberate

Indifference to Suicide Claim. Exhibit "A", Amended Complaint ("AC"). Plaintiff has learned

that Dr. Wiener has died and is not opposing the 12(b)(6) Motion to Dismiss him. Plaintiff has

sued Wellpath, Inc. in Count III of the Amended Complaint, which alleges a *Monell* claim, and

Count IV, which alleges a state law claim for Negligence. Plaintiff has also sued Wellpath, Inc.

employees, referred to as "nurses", Jane/John Doe #'s 1-15, who provided medical care to the

Plaintiff. The Wellpath, Inc. employees who provided medical care to the Plaintiff are not the

1

subject of the instant Motion, but are relevant to establishing liability against Wellpath, Inc. in the *Monell* claim and Negligence Claim.

In support of their Motion, Defendants have attached an Affidavit by Tina L. McCullough, who is Wellpath, Inc.'s Regional Manager for the Pennsylvania Regional Office. Exhibit "B", McCullough Affidavit. On a 12(b)(6) Motion to Dismiss, the Court is generally limited to considering "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of the claim." *Lum v. Bank of America*, 361 F.3d 217, 222 (3rd Cir. 2004). Accordingly, "[r]eliance on declarations from prison officials or Corrections Department administrators requires conversion" of the 12(b)(6) Motion into a Motion for Summary Judgment. *Berry v. Klum*, 283 F. App'x 1, 3 (3rd Cir. 2008). Because of this, Defendants have asked in the alternative that the Court consider this as a Motion for Summary Judgment.

The District Court "has discretion to either convert the motion to dismiss into a motion for summary judgment, or to ignore the matters presented outside the pleadings and continue to treat the filing as a motion to dismiss." *Ribaudo v. Desimone*, 2019 U.S. Dist. LEXIS 60036 at *13 (M.D. Pa. April 5, 2019) (internal cite omitted). For the following reasons, the Plaintiff is requesting that the Court ignore the matters presented in the Affidavit and address the instant Motion as a 12(b)(6) Motion to Dismiss. First, "conversion is particularly inappropriate" where there has not been a reasonable opportunity for discovery. *Ribaudo*, 2019 U.S. Dist. LEXIS 60036 at *14; *E.I. du Pont de Nemours & Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (holding conversion "is not appropriate where the parties have not had an opportunity for reasonable discovery."); *Kurdyla v. Pinkerton Sec.*, 197 F.R.D. 128, 131 (D.N.J. 2000) ("A court should not convert a motion . . . when little or no discovery has occurred.").

Second, pursuant to Fed. R. Civ. P. 12(d), if the Court considers the Affidavit and converts the Motion into one for summary judgment "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." This requires that the Court give the Plaintiff notice of its intention to convert the matter into summary judgment and "an opportunity to submit materials admissible in a summary judgment proceeding or schedule[ ] a hearing." *Fed. Ins. Co. v. Un-Marts LLC*, 2008 U.S. Dist. LEXIS 47801 at *6-7 (M.D. Pa. June 18, 2008). It is reversable error if the Court fails to give notice that it is converting the Motion and an opportunity to submit admissible to the summary judgment proceeding. *Id.*, at *6-7. Under the circumstances of this case, where no discovery has been conducted, this would, at a minimum, require the Court to grant a period of discovery to enable the Plaintiff to appropriately respond to the Motion. *See* Fed. R. Civ. P. 56(d).

Third, the Motion is not framed as a Motion for Summary Judgment. There is no Statement of Undisputed Material Facts or a Contra-Statement of Material Facts in Dispute. Accordingly, "the Court does not benefit from the sharpening of the factual disputes that is envisioned by [Rule 56]." *Ribaudo*, 2019 U.S. Dist. LEXIS 60036 at *14.

Finally, as well discussed in more detail below, the Affidavit should not be considered because it is not responsive to allegations in the Amended Complaint regarding the intake that was conducted by Wellpath, Inc. employees, and Plaintiff's *Monell* claim against Wellpath, Inc., which is based on Wellpath, Inc.'s failure to have "adequate polices and procedures for addressing persons who are suicidal, failing to provide them with adequate psychiatric medical care and treatment, and failing to place them on suicide watch." Exhibit "A", AC, ¶¶ 30 thru 36, 63.

## II.    STATEMENT OF FACTUAL ALLEGATIONS IN AMENDED COMPLAINT

Plaintiff alleges that Defendant Wellpath, Inc. "contract[ed] with the Pa. DOC and/or SCI Phoenix hire, train and supervise medical/psychiatric personnel and to establish related procedures and policies for SCI Phoenix, and to provide constitutionally adequate medical care to persons incarcerated at SCI Phoenix, and to protect inmates from suicide, including Plaintiff, Daniel Newberg." Exhibit "A", AC. ¶ 12. In carrying out its duty to "provide medical and/or psychiatric care to inmates at SCI Phoenix, including the Plaintiff, Daniel Newberg", Defendant Wellpath, Inc. "acted or failed to act by and through its/their agents, servants, and/or employees, then and there acting within the course and scope of their agency or employment." *Id.*, ¶¶ 14, 25.

The Amended Complaint further alleges that Wellpath, Inc. "agents, servants, and/or employees" were responsible for the intake of inmates at SCI Phoenix, including the Plaintiff. *Id.*, ¶¶ 30, 31, 32, 33, 34, 35. During the intake process, which was conducted by "Wellpath Nurses #'s 1-15", Defendant learned that the Plaintiff "suffered from bipolar disorder/depression, that he was prescribed Lexapro, Wellbutrin and Seroquel for his condition, and that if did not receive the aforementioned medicines on a daily basis he became suicidal, and that he had a history of suicide."[1] *Id.*, ¶ 30. The Wellpath employees further learned that Plaintiff was

---

[1]    In the McCulloch Affidavit, she avers that Wellpath, Inc. did not employ any "Registered Nurses" or "Licensed Practical Nurses" at SCI Phoenix. Exhibit "B", McCulloch Affidavit, ¶ 6. Significantly, the Affidavit does not deny that Wellpath, Inc. employees provided medical care to inmates or that Wellpath, Inc. employees did the intake at SCI Phoenix. Moreover, it doesn't address the fact that Plaintiff did not use the terms "Registered Nurses" or Licensed Practical Nurses" but instead referred to the employees simply as "nurses", or more generally as "agents, servants, and/or employees". Exhibit "A", AC, ¶ 14. The Affidavit also doesn't address the fact that pursuant to the liberal pleading requirements of Rule 8(a), magic words aren't required to state a claim and the fact that Wellpath, Inc. employees identified as "nurses" were not "Registered Nurses" or "Licensed Practical Nurses", or even "nurses", but instead were "agents, servants, and/or employees" does not defeat the Plaintiff's claim against Wellpath, Inc.. *M.T. v. Uniontown Area Sch. Dist.*, 2021 U.S. Dist. LEXIS 39288 at *19-20 (W.D. Pa. March 3, 2021) ("magic words" not required). Paragraph 6 of the Affidavit therefore does not provide a ground

4

"depressed, anxious, had been committed for mental health issues", and were also provided

"details of [Plaintiff's] prior suicide attempts, including his most recent attempt." Exhibit "A",

AC. ¶ 31. Plaintiff further alleges that the Wellpath Jane/John Doe employees informed him that

they could not prescribe him the medications he needed and that only the prison psychiatrist

could prescribe them. *Id.*, ¶ 32. In response, Plaintiff requested to be immediately seen by the

prison psychiatrist, and was told by the Wellpath Jane/John Doe employees that it could be days

before he was seen by the psychiatrist. *Id.*, ¶ 33.

The Amended Complaint alleges that despite learning in the intake process that the

Plaintiff had a history of suicide attempts and serious mental health issues, and that he became

suicidal if he did not get his prescribed medicines, and despite knowing that the Plaintiff was not

going to be prescribed his medicine for days or until he saw the psychiatrist, the Wellpath

Jane/John Doe employees "ignored the Plaintiff's substantial risk of suicide, and his serious

medical needs, by failing to immediately schedule him to see the prison psychiatrist and/or

failing to give him his needed medicines and/or failing to put him suicide watch."[2] *Id.*, ¶ 34; *see*

---

for dismissing the Amended Complaint, but instead raises issues regarding the identity and title
of the Wellpath, Inc. employees who did the intake, which can only be resolved through
discovery.

[2]     The McCullough Affidavit would have this Court believe that there is bright line between
the Medical Care provided by the Wellpath, Inc. employees and the medical care provided by
MHM Services, Inc., which contracted to provide psychiatric/mental health care. Specifically,
the Affidavit avers that Wellpath, Inc. "does not have any obligations under the contract to
provide mental health services". Exhibit "B", McCullough Affidavit, ¶ 3. Contrary to this
characterization, Wellpath, Inc. and its employees had/have a constitutional duty to protect the
Plaintiff from the risk of suicide, and to provide him adequate medical care, regardless of who
contracted to provide medical care and who contracted to provide psychiatric care. More
importantly, the Affidavit ignores the fact that as the Amended Complaint alleges, Wellpath,
Inc., by and through its employees Jane/John Doe #'s 1-15, conducted the initial intake at the
prison, and was the medical provider who learned that the Plaintiff had a history of suicide, was
depressed, and needed certain medicines or he would become suicidal, and hence needed to
immediately see a psychiatrist and receive his medicines. It therefore was Wellpath Jane/John
Doe employees who ignored the information learned during the intake regarding the Plaintiff's

*also* ¶¶ 35, 36, 37.  Furthermore, Plaintiff alleges that after he was placed on the block, his condition was visibly deteriorating and he informed the Wellpath Jane/John Doe employees that "his condition was getting worse, and that he needed to see the Doctor and get his medicines because he was becoming suicidal", and that they ignored his pleas.  Exhibit "A", AC. ¶¶ 40, 41, 42, 43.

      In terms of the *Monell* claim against Wellpath, Inc., the Amended Complaint alleges that Wellpath, Inc. failed to have adequate polices and procedures for addressing persons who were suicidal, which included "failing to have a policy/procedure to immediately schedule a psychiatric evaluation for inmates who, like the Plaintiff, suffered from severe mental health issues, including prior suicide attempts and hospitalization, and needed to see the psychiatrist to get the medicines he needed to avoid getting depressed and becoming suicidal, when the need for such policies and procedures was obvious." *Id.*, ¶ 63. Plaintiff further alleges that this unconstitutional policy/procedure was based on a desire to save money by withholding medical care and treatment and also based on "a systemic belief that citizens, arrestees, detainees and prisoners are manipulative and the psychiatric needs, even where a person is suicidal, do not warrant medical care and treatment." *Id.*, ¶ 64. Plaintiff further alleges that Wellpath, Inc. failed to properly train its employees who do the intake at the prison "regarding the warning signs of potential suicides, and fail[ed] to adequately train them regarding the necessary precautions to avoid suicides". *Id.*, at 65.

---

substantial risk of suicide, and failed to protect him from that risk notwithstanding the fact that MHM Service, Inc. had the contract to provide mental health services at the prison. The McCullough Affidavit ignores these facts, and attempts to imply that Wellpath, Inc. and its employees had absolutely no duty or role in protecting the Plaintiff from the substantial risk of suicide or in providing the Plaintiff adequate medical care. As plead, this is simply not true.

Count IV of the Amended Complaint alleges a Negligence claim against Wellpath, Inc. Consistent with Pennsylvania law, Plaintiff alleges that the medical care that Wellpath, Inc. provided the Plaintiff failed to comply with "generally accepted standards of care in their treatment of the Plaintiff." Exhibit "A", AC, ¶ 71. In support of Count IV, Plaintiff has filed the required Certificates of Merit. Exhibit "C", Certificates of Merit.

**III.        STANDARD OF REVIEW**

Federal Rule of Civil Procedure 8(a) only requires that a plaintiff's complaint set forth "a short and plain statement of the claim". Fed.R.C.P. 8(a)(2); *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3rd Cir. 2008) (recognizing in *Twombly* the Supreme Court reaffirmed that Rule 8 only requires a short and plain statement). In elaborating on Rule 8(a), the Supreme Court has held that a complaint is sufficient if it "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests". *Conley v. Gibson*, 335 U.S. 41, 47 (1957); *see also Leatherman v. Tarrant County*, 507 U.S. 163 (1993) (no heightened pleading requirement for § 1983 claims); *Phillips*, 515 F.3d at 231. As the Court made clear, because the Rule only requires "notice pleading", the plaintiff does not have to "set out in detail the facts upon which he bases his claim." *Id.* While Rule 8(a) only requires notice pleading and hence does not require the Plaintiff to set forth every fact that supports the claims, recent Supreme Court decisions have made clear that a plaintiff must provide sufficient factual allegations to make out a "plausible claim for relief." *Ashcroft v. Iqbal*, 129 Sup. Ct. 1937, 1950 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Summing up the "Supreme Court's formulation of the pleading standard" in *Twombly*, the Third Circuit held "'stating . . .a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. (cite omitted). This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for

enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234. Accordingly, a complaint is sufficient if it provides fair notice of the Plaintiff's claim and the grounds upon which the claim rests. *Id.* at 233.

Against the liberal pleading requirements of Rule 8(a), Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.C.P. 12(b)(6). Under Rule 12(b)(6), the defendant bears the burden of showing that no claim has been stated. *Piazza v. Major League Baseball*, 831 F.Supp. 420, 424 (E.D. Pa. 1993). In considering whether a defendant has met his burden, a court must "accept as true the facts alleged in the complaint and all reasonable inferences that can be drawn from them." *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990). As the Third Circuit has acknowledged, "[t]he issue is not whether [the] plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test". *Lake v. Arnold*, 112 F.3d 682, 688 (3d Cir. 1997) (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Moreover, the Third Circuit has consistently held that if a claim is vulnerable to dismissal under Rule 12(b)(6), the plaintiff should be given the opportunity to amend the complaint and cure the deficiency, even if the Plaintiff hasn't moved to amend the complaint. *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000). Indeed, as the court has recognized, under these circumstances, the failure of the district court to allow the amendment is an abuse of discretion:

> [T]his court has consistently held that when an individual has filed a complaint under § 1983 which is dismissable [sic] for lack of factual specificity, he should be given a reasonable opportunity to cure the defect, if he can, by amendment of the complaint and denial

8

of an application for leave to amend under these circumstances is
an abuse of discretion.

*Darr v. Wolf*, 767 F.2d 79, 81 (3d Cir. 1985); s*ee also Phillips v. County of Allegheny*, 515 F.3d

224, 228 (3rd Cir. 2008)("unless amendment would be futile, the District Court must give a

plaintiff the opportunity to amend the complaint."); *Borelli v. City of Reading,* 532 F.2d 950, 951

n.1 (3d Cir. 1976).

## IV.   LEGAL ARGUMENT

### A.   Plaintiff has sufficiently alleged the personal involvement of the Wellpath employees in Count I of the Amended Complaint and sufficiently alleged a *Monell* claim against Wellpath, Inc. in Count III of the Amended Complaint.

While Defendant Wellpath, Inc. argues that the Amended Complaint fails to "articulate

specific facts suggesting the personal involvement of " Wellpath, Inc. or its employees, it should

be noted that Wellpath, Inc. has not moved on behalf of its employees, and Count I of the

Amended Complaint only alleges a claim against Wellpath, Inc.s employees, Jane/John Doe #'s

1-15, and not Wellpath, Inc. Exhibit "A", AC. Count I. The only claims the movant, Wellpath,

Inc., has been sued in are Count III (*Monell* claim) and Count IV (Negligence Claim). Defendant

Wellpath, Inc. is therefore only moving to dismiss Counts III and IV of the Amended Complaint

against it.

In terms of the personal involvement of the Wellpath, Inc. employees in the violation of

the Plaintiff's constitutional right to be free from the risk of suicide (Count I), Defendant's

argument hinges exclusively on the McCullough Affidavit, and the averment that Wellpath, Inc.

"does not have any obligations under the contract to provide **mental health services."** Exhibit

"B", McCullough Affidavit, ¶ 3 (emphasis in the original). Specifically, Defendant Wellpath,

Inc. contends "Plaintiff's claims are built on the hypothesis that Wellpath, LLC . . . *should have*

been aware of the deficiencies in Mr. Newberg's mental health care due to their role as the

9

contract medical provider." Def's Memo Law (emphasis in the original). From the proposition that Wellpath, Inc. was not responsible for the mental health service, but only provided medical care, Defendant concludes "Plaintiff has failed to specifically aver the personal involvement and/or *actual* knowledge of . . . Wellpath, LLC, or its employees in the alleged deficiencies that led to Mr. Newberg's injuries." Def's Memo Law (emphasis in the original).

Before addressing the Defendant's personal involvement argument, Plaintiff will address Defendant's contention that it can't be held responsible/liable for the violation of the Plaintiff's constitutional rights because it provides medical care and not mental health care. This is clearly a defense to Plaintiff's claim (supported only by evidence outside of the pleadings). The courts have held that "'the existence of a defense does not undercut the adequacy of the claim' on a Rule 12(b)(6) motion to dismiss", *Fagin v. Gilmartin*, 432 F.3d 276, 284 n. 1 (3rd Cir. 2005), and accordingly the existence of a potential defense does not generally "trigger the dismissal of a complaint under Rule 12(b)(6)." *Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3rd Cir. 2005). In this case, whether Wellpath, Inc. and its employees had any involvement in the violation of the Plaintiff's right to be free from the risk of suicide can be developed through discovery; however, at this stage of the proceedings, the allegations in the Amended Complaint must be taken as true, and those allegations are sufficient to establish the personal involvement of the Wellpath employees Jane/John Doe #'s 1-15.[3] *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3rd Cir. 2008).

---

[3]    Contrary to the Defendant's claim that it can't be held liable because it only provides medical care and not mental health care, the Courts have recognized that prison guards, who don't provide any medical care, can be held liable for violating an inmate's right to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). It follows from this that even if Wellpath, Inc. did not contract for providing mental health care, it can still be held liable for failing to fulfill its constitutional duty and protect the Plaintiff from a substantial risk of suicide.

In order to state a claim for failure to protect from suicide, "whether a pre-trial detainee or a convicted prisoner, a plaintiff must show: (1) that the individual had a particular vulnerability to suicide, meaning there was a 'strong likelihood, rather than a mere possibility', that a suicide would be attempted; (2) that the prison official knew or should have known of the individuals particular vulnerability; and (3) that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability." *Palakovic v. Wetzel*, 854 F.3d 209, 223-24 (3rd Cir. 2017).   At the pleading stage, the Plaintiff is only required to allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 219 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Bell Atlantic Corp. v. Twombly.* 127 S. Ct. 1955, 1965 (2007)).  In applying this standard, "courts must consider the complaint in its entirety", *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), and "determine whether the complaint as a whole contains enough factual matter to state a facially plausible claim." *Argueta v. U.S. Immigration & Customs Enf't.*, 643 F.3d 60, 74 (3rd Cir. 2011).

Defendant is correct that in a § 1983 claim an individual defendant "must have personal involvement in the alleged wrongdoing", which "can be shown through allegations of personal direction or actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3rd Cir. 2005) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3rd Cir. 1988)). However, contrary to Defendant's position, Plaintiff has clearly alleged sufficient facts from which it can be inferred

that the Wellpath, Inc. employees had personal involvement in failing to protect the Plaintiff from a substantial risk of suicide.

First, Plaintiff alleges that Wellpath, Inc. employees were responsible for the medical intake at SCI Phoenix. Exhibit "A", AC, ¶¶ 30, 31, 32, 33, 34, 35. During that intake process, Wellpath, Inc. employees learned that Plaintiff "suffered from bipolar disorder/depression, that he was prescribed Lexapro, Wellbutrin and Seroquel for his condition, and that if did not receive the aforementioned medicines on a daily basis he became suicidal, and that he had a history of suicide." *Id.*, ¶ 30. The Wellpath employees also learned that that Plaintiff was "depressed, anxious, had been committed for mental health issues", and were also provided "details of [Plaintiff's] prior suicide attempts, including his most recent attempt." *Id.*, ¶ 31. Although the Wellpath employees were informed that the Plaintiff would become suicidal if he did not receive his medicines, they informed the Plaintiff that they could not prescribe him his medicines, and he would have to wait until he saw the psychiatrist to get them. *Id.*, ¶ 32. In addition, the Wellpath employees refused the Plaintiff's request to immediately schedule him to see the psychiatrist. *Id.*, ¶ 33.

From these factual allegations, it can be inferred that the Wellpath employees who conducted the intake of the Plaintiff knew that the Plaintiff had a particular vulnerability to suicide and posed a substantial risk of suicide. It can also be inferred that they were personally involved in assessing the Plaintiff's risk of suicide. In addition to these facts, the Amended Complaint alleges that that after Plaintiff was placed on the block, his condition was visibly deteriorating and he informed the Wellpath employees on a number of occasions that "his condition was getting worse, and that he needed to see the Doctor and get his medicines because he was becoming suicidal", and that they ignored his pleas. *Id.*, ¶¶ 40, 41, 42, 43. These

allegations further support that the Wellpath employees knew of the Plaintiff's vulnerability to suicide, and of the risk that he would attempt to commit suicide.

Plaintiff also has alleged facts from which it can be inferred that the Wellpath employees were deliberately indifferent to the Plaintiff's risk of suicide. Plaintiff alleges that after learning at the intake that the Plaintiff was vulnerable to suicide, and posed a risk of suicide, the employees "ignored the Plaintiff's substantial risk of suicide, and his serious medical needs, by failing to immediately schedule him to see the prison psychiatrist and/or failing to give him his needed medicines and/or failing to put him suicide watch."  Exhibit "A", AC, ¶ 34; *see also* ¶¶ 35, 36, 37. In addition, after seeing the Plaintiff's deteriorating condition when he was on the block, and hearing him plead for help because he was becoming suicidal, the Wellpath employees ignored his pleas. *Id.*, ¶¶ 40, 41, 42, 43. These allegations are sufficient to create an inference that the Wellpath employees were deliberately indifferent to the Plaintiff's serious risk of suicide. Moreover, in terms of personal involvement, the allegations demonstrate that the Wellpath employees were aware of or had knowledge of the Plaintiff's vulnerability to suicide, and the risk that he would attempt to kill himself, and they ignored the risk and failed to take any action to protect the Plaintiff and ensure his safety. In short, Plaintiff has sufficiently alleged facts from which it can be inferred that the Wellpath, Inc. employees were directly involved in the violation of the Plaintiff's constitutional right to be free from the risk of suicide. Plaintiff has therefore satisfied the personal involvement requirement for stating a claim for deliberate indifference to the risk of suicide against the Wellpath, Inc. employees in Count I of the Amended Complaint.

Defendant's challenge to the *Monell* claim (Count III) also is based on the alleged lack of personal involvement by the Wellpath employees. Although it doesn't expressly spell it out, it is

apparently Defendant's position that because Plaintiff cannot state a claim against the Wellpath

employees in Count I based on a lack of personal involvement, he cannot state a *Monell* claim

against Wellpath, Inc. *See e.g. Vargas v. City of Philadelphia*, 783 F.3d 962, 975 (3rd Cir. 2015)

("Because the officers did not violate any of her constitutional rights . . . there was no violation

for which the City of Philadelphia could be held responsible."). That this is Defendant's position

is supported by the fact that the Motion to Dismiss does not directly address the sufficiency of

Plaintiff's *Monell* allegations. Because this appears to be the Defendant's argument, for the

reasons stated above, Plaintiff has sufficiently alleged facts from which it can be inferred that the

Wellpath employees were directly responsible for violating the Plaintiff's constitutional rights

and accordingly the Motion to Dismiss the *Monell* claim must be denied.

However, out of an abundance of caution, Plaintiff will briefly discuss the *Monell* claim

against Wellpath, Inc. It is well-established law that "municipalities and other local government

units" cannot be held liable under 42 U.S.C. § 1983 under a respondeat superior theory of

liability. *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 690-91 (1961).

"Instead, it is when execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts

the injury that the government as an entity is responsible under § 1983." *Id.*at 694.  The Third

Circuit has identified three paths to municipal liability:

> There are three situations where acts of a government employee may be deemed to be the
> result of a policy or custom of the governmental entity for whom the employee works,
> thereby rendering the entity liable under § 1983. The first is where "the appropriate
> officer or entity promulgates a generally applicable statement of policy and the
> subsequent act complained of is simply an implementation of that policy." Bryan County,
> 520 U.S. at 417 (Souter, J., dissenting). The second occurs where "no rule has been
> announced as policy but federal law has been violated by an act of the policymaker
> itself." Id. Finally, a policy or custom may also exist where "the policymaker has failed to
> act affirmatively at all, [though] the need to take some action to control the agents of the
> government 'is so obvious, and the inadequacy of existing practice so likely to result in

14

the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" Id. at 417-18 (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 390, 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1989))[.]

Natale v. Camden County Correctional Facility, 318 F.3d 575, 584 (3rd Cir. 2003).

As set-forth above, under the third basis, liability may be established where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the adequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" Id. Accordingly, an unconstitutional "policy or custom" may be established where the policymaker failed to implement any policy, the need for one is obvious, and the failure to have one is "likely to result in the violation of constitutional rights." Id.

In this case, the Plaintiff alleged that Wellpath, Inc. failed to have adequate policies and procedures for addressing persons who were suicidal, which included "failing to have a policy/procedure to immediately schedule a psychiatric evaluation for inmates who, like the Plaintiff, suffered from severe mental health issues, including prior suicide attempts and hospitalization, and needed to see the psychiatrist to get the medicines he needed to avoid getting depressed and becoming suicidal, when the need for such policies and procedures was obvious." Id., ¶ 63. This allegation is supported by the allegations discussed above, which establish that during the intake process, and also subsequently after the Plaintiff had been moved to the block, the Wellpath employees learned that the Plaintiff had a vulnerability to suicide, with a number of prior attempts that he detailed to them, and also that there was a serious risk that he would attempt suicide based not only on his prior suicide and mental health history, but also because he was not receiving the medicines he required to prevent him from becoming suicidal. Despite

having this knowledge, the Wellpath employees did nothing to protect the Plaintiff from the serious risk of suicide, and instead ignored his pleas, which resulted in his attempt with the resulting serious injuries. Under these circumstances, the need for some policy or procedure requiring the Wellpath employees to take affirmative steps to protect a person who they know poses a suicide risk is obvious.

Indeed, support for this conclusion is found in the position adopted by the Defendant in the instant Motion. Despite their knowledge that the Plaintiff posed a serious risk for suicide, Wellpath, Inc. attempts to wash its hands of the matter by claiming that it only had the contract for medical care and not mental health care. Defendant's position, which may explain a lack of any policy or procedure requiring Wellpath employees to take affirmative steps to protect a person who they know poses a suicide risk, ignores the fact that under the constitution Wellpath has a duty to protect inmates from the risk of suicide regardless of who has the mental health care contract. Because Wellpath, Inc. did the medical intake at SCI Phoenix, it stood as the gatekeeper for all medical issues, including mental health issues such as the risk of suicide, and it needed proper policies and procedures to ensure that these issues were addressed, and inmates given the proper care. As stated above, the need for such policies and procedures is obvious. Accordingly, for the above reasons, Defendant's Motion to Dismiss Count III should be denied.

**B.      Plaintiff has sufficiently alleged a Negligence claim against Wellpath, Inc.**

Wellpath, Inc. also seeks to dismiss the negligence claim against it. As with the Defendant's challenge to the § 1983 claims, it is Defendant's position that it had no responsibility for providing mental health care and therefore can't be held liable for negligence. However, for many of the reasons discussed above, Defendant's did owe a duty to the Plaintiff – in this case a duty to exercise reasonable care and comply with generally accepted medical

16

standards in caring for the Plaintiff. Exhibit "A", AC, ¶¶ 71. As discussed above, this duty extended to the intake process, which the Wellpath employees conducted. During that intake, the Wellpath Defendants learned that Plaintiff had a significant mental health and suicide history, needed certain medicines or he would become suicidal, and was not going to be given those medicines. Restated, the Wellpath Defendants learned the Plaintiff posed a serious suicide risk, and in response to that knowledge did nothing to protect him from the risk of suicide. These facts are certainly sufficient, along with the Ceritificates of Merit the Plaintiff has filed, to establish a Negligence claim against the Wellpath Defendants for their conduct during the intake process.

Perhaps realizing this, Defendants characterize the McCullough Affidavit as an Affidavit of Non-Involvement, and contend that under 40 Pa. C. S. § 1303.506(a) this Affidavit requires that the Negligence claim against Wellpath, Inc. be dismissed. On its face, the McCullough Affidavit is not an Affidavit of Non-Involvement. Exhibit "B", McCullough Affidavit. Nowhere in either the heading or the body of the Affidavit is it referred to as an Affidavit of Non-Involvement. More importantly, the substance of the Affidavit does not provide that Wellpath, LLC and its employees were not involved in the intake process, where it was determined that the Plaintiff was a risk of suicide, were not involved in the decision to not refer the Plaintiff immediately to a psychiatrist or mental health, and were not involved in the decision to not have the Plaintiff placed on suicide watch or otherwise take affirmative action to protect the Plaintiff and ensure he didn't attempt suicide. In short, the Affidavit does not address the "non-involvement" of Wellpath, Inc. and its employees in the intake process that give rise to both § 1983 claims and Negligence claim against it. Therefore the McCullough Affidavit, even if it were an Affidavit of Non-Involvement, doesn't apply to the Negligence claim against Wellapth, Inc. and doesn't require that the negligence claim be dismissed.

V.      **CONLUSION**

For the above stated reasons, Defendant Wellpath, Inc.'s 12(b)(6) Motion to Dismiss

Counts III and IV of the Amended Complaint should be denied.


RESPECTFULLY SUBMITTED,


BY:_s/Alan Denenberg_____
ALAN DENENBERG, ESQUIRE
ATTORNEY FOR PLAINTIFF

**ABRAMSON & DENENBERG, P.C.**                    **ATTORNEY FOR PLAINTIFF**
**BY:  ALAN DENENBERG, ESQUIRE**
**IDENTIFICATION NO:  54161**
**1315 WALNUT STREET, SUITE 500**
**PHILADELPHIA, PA 19107**
**(215) 546-1345**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DANIEL NEWBERG** : | |
| **Plaintiff** : | |
| : | *FILED ELECTRONICALLY* |
| **v.** : | |
| : | **CIVIL ACTION** |
| **PENNSYLVANIA DEPARTMENT OF** : | |
| **CORRECTIONS, et al.** : | **NO. 2:22-CV-00304** |
| **Defendants** : | |

### CERTIFICATE OF SERVICE

I, Alan Denenberg, Esquire, hereby certify that on April 13, 2022, a true and correct copy of Plaintiffs' Response to Defendants 12(b)(6) Motion to Dismiss Counts III and IV of the Amended Complaint was served electronically via the Courts' electronic filing system on all counsel of record.

Date:  April 13, 2022                    _s/ Alan Denenberg_____
                                        ALAN DENENBERG, ESQUIRE
                                        ATTORNEY FOR PLAINTIFF

ABRAMSON & DENENBERG, P.C.
BY:  ALAN E. DENENBERG, ESQUIRE
IDENTIFICATION NO:  54161
1315 WALNUT STREET, SUITE 500
PHILADELPHIA, PA 19107
(215) 546-1345

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL NEWBERG | : | |
| 418 WESNER AVENUE | : | CIVIL ACTION |
| GLENOLDEN, PA 19036 | : | |
| Plaintiff | : | NO. 2:22-cv-00304 |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| PENNSYLVANIA DEPARTMENT OF | : | |
| CORRECTIONS | : | |
| 1920 TECHNOLOGY PARKWAY | : | |
| MECHANICSBURG, PA 17050 | : | |
| and | : | |
| JAMIE SORBER | : | |
| SUPERINTENDENT SCI PHOENIX | : | |
| 1200 MOKYCHIC ROAD | : | |
| COLLEGEVILLE, PA 19426 | : | |
| and | : | |
| STEPHEN WIENER, M.D. | : | |
| MEDICAL DIRECTOR SCI PHOENIX | : | |
| 1200 MOKYCHIC ROAD | : | |
| COLLEGEVILLE, PA 19426 | : | |
| and | : | |
| SCI PHOENIX CORRECTIONAL OFFICERS | : | |
| JANE/JOHN DOE #'s 1-15 | : | |
| 1200 MOKYCHIC ROAD | : | |
| COLLEGEVILLE, PA 19426 | : | |
| and | : | |
| MHM SERVICES, INC. a/k/a MHM HEALTH | : | |
| PROFESSIONALS LLC a/k/a MHM | : | |
| CORRECTIONAL SERVICES, LLC d/b/a | : | |
| CENTURION HEALTH *incorrectly identified as* | : | |
| CORRECT CARE SOLUTIONS | : | |
| 1593 SPRING HILL RD, SUITE 600 | : | |
| VIENNA, VA  22182-2252 | : | |
| and | : | |
| WELLPATH, INC. | : | |



**1200 MOKYCHIC ROAD**                                    :
**COLLEGEVILLE, PA 19426**                               :
        **and**                                                 :
**SCI PHOENIX HEALTH CARE PROVIDER**                     :
**JENNIFER WARD**                                        :
**1200 MOKYCHIC ROAD**                                    :
**COLLEGEVILLE, PA 19426**                               :
        **and**                                                 :
**SCI PHOENIX HEALTH CARE PROVIDER**                     :
**CHRISTINE STICKNEY**                                   :
**1200 MOKYCHIC ROAD**                                    :
**COLLEGEVILLE, PA 19426**                               :
        **and**                                                 :
**SCI PHOENIX HEALTH CARE PROVIDER**                     :
**J. FERNANDEZ**                                         :
**1200 MOKYCHIC ROAD**                                    :
**COLLEGEVILLE, PA 19426**                               :
        **and**                                                 :
**SCI PHOENIX HEALTH CARE PROVIDER**                     :
**YUEHENG HAN**                                          :
**1200 MOKYCHIC ROAD**                                    :
**COLLEGEVILLE, PA 19426**                               :
        **and**                                                 :
**MHM SERVICES, INC/WELLPATH, INC.**                     :
**NURSES JANE/JOHN DOE #'s 1-15**                        :
**1200 MOKYCHIC ROAD**                                    :
**COLLEGEVILLE, PA 19426**                               :
        **and**                                                 :
**MHM SERVICES/WELLPATH, INC.**                          :
**DR. JANE AND JOHN DOE #'s 1-5**                        :
**1200 MOKYCHIC ROAD**                                    :
**COLLEGEVILLE, PA 19426**                               :

_____

## AMENDED COMPLAINT

## I.  INTRODUCTION

1.   Plaintiff, Daniel Newberg, brings this action for damages pursuant to

to 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment and/or the Eighth

Amendment of the United States Constitution as a result of the serious injuries he sustained

when he attempted to commit suicide while incarcerated at the State Correctional Institution at

Phoenix (hereinafter "SCI Phoenix").

**II.     JURISDICTION AND VENUE**

2.     The court has jurisdiction over the Federal Law Claims pursuant to 28 U.S.C.

§1331 and §1343 and jurisdiction over the State Law Claims pursuant to 28 U.S.C. § 1367 and the

principals of pendant and ancillary jurisdiction.

3.     Venue is proper under 28 U.S.C. §1391(b) because the cause of action upon which the

complaint is based arose in Montgomery County, Pennsylvania, which is in the Eastern District of

Pennsylvania.

**III.    PARTIES**

4.     The Pennsylvania Department of Corrections (hereinafter "Pa. DOC") is the

governmental entity responsible for overseeing the Pennsylvania prison system, including SCI

Phoenix.

5.     Defendant, Jamie Sorber, was at all material times the Superintendent of SCI Phoenix

and was responsible for overseeing all aspects of the prison, including the medical care and safety of

inmates such as the Plaintiff, Daniel Newberg. Defendant Sorber was at material times acting under

the color of state law, in the course and scope of his employment and is being sued in his individual

capacity.

6.     Defendant Dr. Stephen Wiener was at all material times the Medical Director at SCI

Phoenix and was responsible for implementing all policies/practices/procedures related to the medical

care at SCI Phoenix, and for directly overseeing the medical care and treatment of inmates including

the Plaintiff, Daniel Newberg. Defendant Dr. Wiener was at material times acting under the color of

state law, in the course and scope of his employment and is being sued in his individual capacity.

7.     Defendants SCI Phoenix Correctional Officers #'s 1-15 (hereinafter "C.O.'s) are adult individual residents of the Commonwealth of Pennsylvania, who at all material times were employed by the Pa DOC and/or SCI Phoenix.

8.     Defendants C.O.'s #'s 1-15 acted within the course and scope of their employment, under color of state law and pursuant to the customs, policies and/or practices of Pa DOC and/or SCI Phoenix, and/or Superintendent Sorber and/or Medical Director Dr. Wiener, and are being sued in their individual capacities.

9.     Defendant MHM Services, Inc. a/k/a MHM Health Professionals LLC a/k/a MHM Correctional Services, LLC d/b/a Centurion Health (hereinafter "MHM"), which was formerly incorrectly identified as Correct Care Solutions, has its primary location/principal place of business as set forth above. At all times material, MHM had a contract with the Pa. DOC and/or SCI Phoenix and/or Wellpath, Inc. to hire, train and supervise medical/psychiatric personnel and to establish related procedures and policies for SCI Phoenix, and to provide constitutionally adequate medical/psychiatric care to persons incarcerated at SCI Phoenix, and to protect those inmates from suicide, including the Plaintiff, Daniel Newberg.

10.    At times material hereto, Defendant, MHM acted under of color of state law, pursuant to contract, in joint participation with Defendants Pa. DOC and/or SCI Phoenix and/or Wellpath, Inc. to provide medical/psychiatric care to inmates at SCI Phoenix and were fulfilling a traditional governmental function.

11.    At all material times, Defendant, MHM, acted or failed to act by and through its/their agents, servants, and/or employees, then and there acting within the course and scope of their agency or employment.

12.     Defendant Wellpath, Inc. is a corporation with its primary location as set forth above. At all times material, Wellpath, Inc., had a contract with the Pa. DOC and/or SCI Phoenix hire, train and supervise medical/psychiatric personnel and to establish related procedures and policies for SCI Phoenix, and to provide constitutionally adequate medical care to persons incarcerated at SCI Phoenix, and to protect those inmates from suicide, including the Plaintiff, Daniel Newberg.

13.     At times material hereto, Defendant, Wellpath, Inc. acted under of color of state law, pursuant to contract, in joint participation with Defendants Pa. DOC and/or SCI Phoenix to provide medical care to inmates at SCI Phoenix and were fulfilling a traditional governmental function.

14.     At all material times, Defendant, Wellpath, Inc. acted or failed to act by and through its/their agents, servants, and/or employees, then and there acting within the course and scope of their agency or employment.

15.     At all material times, Defendant, Jennifer Ward, was a mental health care provider at SCI Phoenix, employed by the DOC and/or MHM and/or Wellpath, Inc., and was responsible for providing medical and/or psychiatric care to inmates at SCI Phoenix, including the Plaintiff, Daniel Newberg.

16.     Defendant Ward was at all material times acting under color of state law, pursuant to the customs/practices/polices of the Pa. DOC and/or SCI Phoenix and/or MHM and/or Wellpath, Inc. and is being sued in her individual capacity.

17.     At all material times, Defendant Christine Stickney was a mental health care provider at SCI Phoenix, employed by the DOC and/or MHM and/or Wellpath, Inc., and was responsible for providing medical and/or psychiatric care to inmates at SCI Phoenix, including the Plaintiff, Daniel Newberg.

18.     Defendant Stickney was at all material times acting under color of state law, pursuant to the customs/practices/polices of the Pa. DOC and/or SCI Phoenix and/or MHM and/or Wellpath, Inc. and is being sued in her individual capacity.

19.     At all material times, Defendant, J. Fernandez, was a mental health care provider at SCI Phoenix, employed by the DOC and/or MHM and/or Wellpath, Inc., and was responsible for providing medical and/or psychiatric care to inmates at SCI Phoenix, including the Plaintiff, Daniel Newberg.

20.     Defendant Fernandez was at all material times acting under color of state law, pursuant to the customs/practices/polices of the Pa. DOC and/or SCI Phoenix and/or MHM and/or Wellpath, Inc. and is being sued in his individual capacity.

21.     At all material times, Defendant, Yuehing Han, was a mental health care provider at SCI Phoenix, employed by the DOC and/or MHM and/or Wellpath, Inc., and was responsible for providing medical and/or psychiatric care to inmates at SCI Phoenix, including the Plaintiff, Daniel Newberg.

22.     Defendant Han was at all material times acting under color of state law, pursuant to the customs/practices/polices of the Pa. DOC and/or SCI Phoenix and/or MHM and/or Wellpath, Inc. and is being sued in his individual capacity.

23.     Defendants MHM/Wellpath, Inc. Jane/John Doe Nurses #'s 1-15 (hereinafter "HMH/Wellpath Nurses") were responsible for providing medical and/or psychiatric care to inmates at SCI Phoenix, including the Plaintiff, Daniel Newberg.

24.     Defendants MHM/Wellpath Nurses #'s 1-15 were at all material times acting under color of state law, pursuant to the customs/practices/polices of the Pa. DOC and/or SCI Phoenix and/or HMH/Wellpath, Inc. and are being sued in their individual capacities.

25.     Defendants MHM/Wellpath, Inc.'s Doctors Jane/John Does #'s1-5 (hereinafter "Dr.'s") were at all times material hereto responsible for providing medical and/or psychiatric care to inmates at SCI Phoenix, including the Plaintiff, Daniel Newberg.

26.     Defendants Dr's Jane/John Doe #'s 1-5 were at times material hereto acting under color of state law, within the course and scope of their employment/contract and are being sued in their individual capacity.

**IV.     OPERATIVE FACTS**

27.     The Plaintiff was on the prescription medications Lexapro, Wellbutrin and Seroquel for mental health issues, including bipolar disorder, depression and prior suicide attempts, which included an attempt to hang himself in his basement in 2019 shortly before he was incarcerated.

28.     On January 14, 2020, the Plaintiff was sent to George Hill Correctional Institution, where he was given two of the three medicines he required on a daily basis, Lexapro and Wellbutrin.

29.     On January 17, 2020, the Plaintiff transferred to SCI Phoenix.

30.     At intake, Plaintiff informed Defendants Ward and/or Stickney and/or Fernandez and/or Han and/or MHM/Wellpath Nurses #'s 1-15 and/or Defendants Dr's Jane/John Doe #'s 1-5 that he suffered from bipolar disorder/depression, that he was prescribed Lexapro, Wellbutrin and Seroquel for his condition, and that if did not receive the aforementioned medicines on a daily basis he became suicidal, and that he had a history of attempted suicides.

31.     At intake, Plaintiff informed Defendants Ward and/or Stickney and/or Fernandez and/or Han and/or MHM/Wellpath Nurses #'s 1-15 and/or Defendants Dr.'s Jane/John Doe #'s

1-5 that he was depressed, anxious, had been committed for mental health issues, and provided

details of his prior suicide attempts, including his most recent attempt.

32.     At that time, Plaintiff was informed by Defendants Ward and/or Stickney and/or

Fernandez and/or Han and/or MHM/Wellpath Nurses #'s 1-15 and/or Defendants Dr's Jane/John

Doe #'s 1-5 that they could not give him Lexapro, Wellbutrin or Seroquel until he was seen by

the prison psychiatrist.

33.     In response, Plaintiff requested to see the prison psychiatrist immediately, but was

informed by Defendants Ward and/or Stickney and/or Fernandez and/or Han and/or

MHM/Wellpath Nurses #'s 1-15 and/or Defendants Dr,'s Jane/John Doe #'s 1-5 that it would be

days before he could see a prison psychiatrist.

34.     Despite knowing that Plaintiff had serious mental health issues, that included a

history of suicide attempts, and despite knowing that Plaintiff became suicidal if he did not take

his Lexapro, Wellbutrin and Seroquel on daily basis, and that he was not being given the

medicine until he saw the prison psychiatrist, Defendants Ward and/or Stickney and/or

Fernandez and/or Han and/or MHM/Wellpath Nurses #'s 1-15 and/or Defendants Dr,'s

Jane/John Doe #'s 1-5, ignored Plaintiff's substantial risk of suicide, and his serious medical

needs, by failing to immediately schedule him to see the prison psychiatrist and/or failing to give

him his needed medicines and/or failing to put him suicide watch.

35.     Defendants Ward and/or Stickney and/or Fernandez and/or Han and/or

MHM/Wellpath Nurses #'s 1-15 and/or Defendants Dr's Jane/John Doe #'s 1-5 intentionally

and/or with deliberate indifference, ignored Plaintiff's substantial suicide risk and did not

provide him adequate medication, or psychiatric/psychological care and treatment, despite the

fact that the need for such medical care and treatment was obvious, and would have been obvious to a lay person.

36.     Defendants Ward and/or Stickney and/or Fernandez and/or Han and/or MHM/Wellpath Nurses #'s 1-15 and/or Defendants Dr's Jane/John Doe #'s 1-5 knew or should have known that Plaintiff was a substantial suicide risk, but failed to place him on suicide watch, provide him adequate medication and/or psychiatric/ psychological care and treatment or any other protection to ensure his safety and protect him from the substantial risk of suicide.

37.     Despite his substantial risk of suicide, Plaintiff was assigned to general population and placed on the block.

38.     While on the block, Plaintiff informed Defendants C.O.'s #'s 1-15 on a nightly basis that he needed to see the Doctor, he was bipolar and needed his medicine, and that he was becoming suicidal.

39.     Plaintiff asked Defendants C.O.'s #'s 1-15 what he needed to do to get help, and was told that there was nothing that could be done, he would just have to wait until he saw the Doctor, and despite Plaintiff's repeated pleas for help, his deteriorating mental health condition, which was obvious even to a lay person, Defendants C.O.'s #'s 1-15 ignored Plaintiff's pleas and requests for help, and failed to communicate Plaintiff's pleas/requests to any of the medical providers or otherwise provide the Plaintiff the help he needed.

40.     Plaintiff also informed Defendants Ward and/or Stickney and/or Fernandez and/or Han and/or MHM/Wellpath Nurses #'s 1-15 who came onto the block that his condition was getting worse, and that he needed to see the Doctor and get his medicines because he was becoming suicidal.

41.     Defendants Ward and/or Stickney and/or Fernandez and/or Han and/or
MHM/C.O.'s #'s 1-15 and/or Wellpath Nurses #'s 1-15 ignored the Plaintiff's repeated pleas for
medical attention and help, and ignored the fact that Plaintiff was visibly deteriorating, despite
their knowledge that Plaintiff had a history of suicide attempts, and became suicidal when he did
not have his medication, and that he had not had his medication for days.

42.     Defendants Ward and/or Stickney and/or Fernandez and/or Han and/or
MHM/Wellpath Nurses #'s 1-15 and/or Defendants C.O.'s #'s 1-15 intentionally and with
deliberate indifference, ignored Plaintiff's substantial suicide risk and his serious medical
condition by ignoring his repeated pleas for medical assistance and help, and his deteriorating
condition, despite the fact that the need for such medical care and treatment was obvious, and
would have been obvious to a lay person.

43.     Despite their knowledge that Defendant was a substantial risk of suicide, and that
he needed to see a Doctor and receive his medications for his serious mental health issues, six
days after he had been committed to SCI Phoenix, he still had not seen a Doctor and had not
received his medicines, and during this time period he could not sleep or eat, was becoming very
depressed, and he communicated all of this to Defendants Ward and/or Stickney and/or
Fernandez and/or Han and/or C.O.'s #'s 1-15 and/or MHM/Wellpath Nurses #'s 1-15, who
ignored his pleas, and his condition, which was visibly deteriorating and would have been
obvious even to a lay person.

44.     Defendants Superintendent Sorber and/or Medical Director Dr. Wiener and/or
MHM/Wellpath, Inc. knew or should have known of Plaintiff's condition, and ignored his pleas
for medical care and treatment because they had a policy/practice/custom of denying medicines
to persons who needed them, in an effort to save money, and also out of the belief that inmates

with mental health issues should just tough it out, and they would be okay without their medicines or medical attention.

45.     On January 23, 2020, just six days after he was transferred to SCI Phoenix, the Plaintiff attempted to commit suicide by jumping of the second floor tier onto the concrete floor on the first tier.

46.     As a result of Defendants Superintendent Sorber's and/or Medical Director Dr. Wiener's and/or Defendants Ward and/or Stickney and/or Fernandez and/or Han and/or C.O.'s #'s 1-15 and/or MHM/Wellpath Nurses #'s 1-15 and/or Dr.'s Jane/John Doe's deliberate indifference to Plaintiff's substantial risk of suicide and serious medical needs, the Plaintiff suffered serious injury, including a shattered right elbow, shattered left tibia, broken left hand/wrist/elbow, broken right foot, broken right orbital bone in the face, broken nose, and bruised ribs.

47.     As a result of Defendants Superintendent Sorber's and/or Medical Director Dr. Wiener's and/or Defendants C.O.'s #'s 1-15 and/or Ward and/or Stickney and/or Fernandez and/or Han and/or MHM/Wellpath Nurses #'s 1-15 and/or Dr.'s Jane/John Doe's deliberate indifference to Plaintiff's substantial risk of suicide and serious medical needs, the Plaintiff was required to undergo surgery on his tibia, right elbow and left hand/wrist, and will need additional surgeries.

48.     As a result of Defendants Superintendent Sorber's and/or Medical Director Dr. Wiener's and/or Defendants Defendants C.O.'s #'s 1-15 and/or Wellpath Nurses #'s 1-15 and/or Dr.'s Jane/John Doe's and/or Ward and/or Stickney and/or Fernandez and/or Han and/or MHM/Wellpath, Inc.'s deliberate indifference to Plaintiff's substantial risk of suicide and serious

medical needs, the Plaintiff spent a month in the hospital and incurred over $657, 471.14 in

medical expense, and will be required to spend more int the future.

49.     As a result of Defendants Superintendent Sorber's and/or Medical Director Dr.

Wiener's and/or Defendants Defendants C.O.'s #'s 1-15 and/or Wellpath Nurses #'s 1-15 and/or

Dr.'s Jane/John Doe's and/or Ward and/or Stickney and/or Fernandez and/or Han and/or

MHM//Wellpath, Inc.'s deliberate indifference to Plaintiff's substantial risk of suicide and

serious medical needs, the Plaintiff suffered mental anguish, emotional distress, loss of

enjoyment of life, humiliation, and incurred expenses, and will continue to incur expenses in the

future.

50.     Defendants Superintendent Sorber's and/or Medical Director Dr. Wiener's and/or

Defendants C.O.'s #'s 1-15 and/or Wellpath Nurses #'s 1-15 and/or Dr.'s Jane/John Doe's and/or

Ward and/or Stickney and/or Fernandez and/or Han and/or MHM/Wellpath, Inc.'s act and

omissions violated the Plaintiff's rights under the Due Process Clause and/or Eighth Amendment

of the Unites States Constitution.

**COUNT I - 42 U.S.C. 1983**
**DUE PROCESS CLAUSE/EIGHTH AMENDMENT--DELIBERATE INDIFFERENCE**
**TO KNOWN RISK OF SUICIDE**
**PLAINTIFF v. C.O.'S #1-15, MHM/WELLPATH NURSES #1-15, DR.'S JANE/JOHN**
**DOE #1-5, JENNIFER WARD, CHRISTINE STICKNEY, J. FERNANDEZ, YUEHING**
**HAN, SUPERINTENDENT SORBER AND MEDICAL DIRECTOR DR. WIENER**

51.     All of the preceding paragraphs are incorporated by reference as if more fully set-

forth herein.

52.     As alleged above, Defendants C.O.'s #'s 1-15 and/or Wellpath, Inc. Nurses #'s 1-

15 and/or Jane/John Doe Dr.'s #'s 1-5 and/or Ward and/or Stickney and/or Fernandez and/or

Han and/or Superintendent Sorber's and/or Medical Director Dr. Wiener  knew that Plaintiff was

particularly vulnerable to suicide and that there was a strong likelihood that he would attempt

suicide, and notwithstanding this knowledge of a significant risk to Plaintiff's health and safety, they were deliberately indifferent by failing to take any action or precaution to prevent Plaintiff from jumping off the second tier, such as placing him on suicide watch or providing him adequate psychiatric care and treatment and his needed medicines.

53.     Plaintiff's vulnerability to suicide was known and obvious as he had informed them of that risk on intake, and continued to inform them while housed in the block.

54.     As the direct and proximate result of the above deliberate indifference of Defendants C.O.'s #'s 1-15 and/or Wellpath, Inc. Nurses #'s 1-15 and/or Jane/John Doe Dr.'s #'s 1-5 and/or Ward and/or Stickney and/or Fernandez and/or Han and/or Superintendent Sorber's and/or Medical Director Dr. Wiener the Plaintiff attempted to commit suicide and sustained serious injury.

55.     The above described actions of Defendants C.O.'s #'s 1-15 and/or Wellpath, Inc. Nurses #'s 1-15 and/or Jane/John Doe Dr.'s #'s 1-5 and/or Ward and/or Stickney and/or Fernandez and/or Han and/or and/or Superintendent Sorber's and/or Medical Director Dr. Wiener in their individual capacities, were so malicious, intentional and reckless and displayed such a reckless indifference to the Plaintiff's rights and well-being, that the imposition of punitive damages is warranted.

**WHEREFORE,** pursuant to 42 U.S.C. §1983 and §1988, Plaintiff demands compensatory and punitive damages against the Defendants C.O.'s #'s 1-15 and/or Wellpath, Inc. Nurses #'s 1-15 and/or Jane/John Doe Dr.'s #'s 1-5 and/or Ward and/or Stickney and/or Fernandez and/or Han and/or and/or Superintendent Sorber's and/or Medical Director Dr. Wiener jointly and/or severally, in an amount sufficient to fully and adequately compensate the Plaintiff and punish and deter the defendants, plus interest, costs, attorney's fees and all other appropriate relief.

### COUNT II - 42 U.S.C. §§ 1983 AND 1988
### DUE PROCESS CLAUSE/EIGHTH AMENDMENT --INADEQUATE MEDICAL CARE
### PLAINTIFF v. WELLPATH NURSES #1-15, DR.'S JANE/JOHN DOE #1-5, JENNIFER
### WARD, CHRISTINE STICKNEY, J. FERNANDEZ, YUEHING HAN

56.     All of the preceding paragraphs are incorporated by reference as if more fully set-forth herein.

57.     Defendants Wellpath Nurses #'s 1-15 and/or Dr.'s Jane/John Doe #'s 1-5 and/or Ward and/or Stickney and/or Fernandez and/or Han were professional health care providers who were responsible for providing medical care and treatment to the Plaintiff while he was incarcerated at SCI Phoenix.

58.     Defendants Wellpath Nurses #'s 1-15 and/or Dr.'s Jane/John Doe #'s 1-5 and/or Ward and/or Stickney and/or Fernandez and/or Han knew that Plaintiff's bipolar disorder, need for psychiatric care and treatment, need for specific medicines and his vulnerability to suicide constituted a serious medical need, yet they ignored the Plaintiff's serious medical need, and were deliberately indifferent to these needs by failing to provide the Plaintiff with his needed medicines and care, including failing to immediately schedule him to see a Psychiatrist, who could make an assessment of his mental health condition and risk of suicide and who could prescribe the medicines that he had been taking and needed to prevent him from becoming depressed and suicidal.

59.     As the direct and proximate result of the above deliberate indifference of Defendants Wellpath, Inc. Nurses #'s 1-15 and/or Jane/John Doe Dr.'s #'s 1-5 and/or Ward and/or Stickney and/or Fernandez and/or Han the Plaintiff attempted to commit suicide and sustained serious injury.

60.     The above described actions of Defendants Wellpath, Inc. Nurses #'s 1-15 and/or Jane/John Doe Dr.'s #'s 1-5 and/or Ward and/or Stickney and/or Fernandez and/or Han in their

individual capacities, were so malicious, intentional and reckless and displayed such a reckless indifference to the Plaintiff's rights and well-being, that the imposition of punitive damages is warranted.

**WHEREFORE**, pursuant to 42 U.S.C. §1983 and §1988, Plaintiff demands compensatory and punitive damages against the Defendants Wellpath, Inc. Nurses #'s 1-15 and/or Jane/John Doe Dr.'s #'s 1-5 and/or Ward and/or Stickney and/or Fernandez and/or Han, jointly and/or severally, in an amount sufficient to fully and adequately compensate the Plaintiff and punish and deter the defendants, plus interest, costs, attorney's fees and all other appropriate relief.

### COUNT III- CUSTOM AND POLICY OF UNCONSTITUTIONAL CONDUCT
### *MONELL* CLAIM
### PLAINTIFF v MHM/WELLPATH, INC.

61.    All of the preceding paragraphs are incorporated by reference as if more fully set-forth herein.

62.    The Plaintiff believes and therefore avers that the Defendants MHM/Wellpath, Inc. have adopted and maintained for many years a recognized and accepted policy, custom, and practice of condoning and/or acquiescing in the deliberate indifference to serious medical needs of citizens, arrestees, detainees and inmates, and subjecting them to the same type of treatment to which Plaintiff was subjected, which policy violates the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States/Eighth Amendment, the laws of the United States and of the Commonwealth of Pennsylvania and was in violation of 42 U.S.C. § 1983.

63.    The aforementioned unconstitutional policy, custom and practice includes failing to provide adequate policies and procedures for identifying persons who are high suicide risks, failing to have proper intervention procedures, failing to have adequate policies and procedures for addressing persons who are suicidal, failing to provide them with adequate psychiatric medical care

and treatment, and failing to place them on suicide watch.  In addition, the unconstitutional policy, custom and practices includes failing to have a policy/procedure to immediately schedule a psychiatric evaluation for inmates who, like the Plaintiff, suffered from severe mental health issues, including prior suicide attempts and hospitalization, and needed to see the psychiatrist to get the medicines he needed to avoid getting depressed and becoming suicidal, when the need for such policies and procedures was obvious.

64.     The aforementioned unconstitutional policy, custom and practice is based on Defendants' desire to save money by not providing the required medical care and treatment and also a systemic belief that citizens, arrestees, detainees and prisoners are manipulative and the psychiatric needs, even where a person is suicidal, do not warrant medical care and treatment.

65.     The Plaintiff believes and therefore avers that the Defendants MHM/Wellpath, Inc. have adopted and maintained for many years a recognized and accepted policy, custom, and practice of failing to adequately train prison and medical staff employees regarding the warning signs of potential suicides, and failing to adequately train them regarding the necessary precautions to avoid suicides, and of failing to discipline employees who allow suicides to occur on their watch.

66.     The Defendants, Defendants MHM/Wellpath, Inc. have been deliberately indifferent to a citizen's right to essential medical care and safety, which deliberate indifference violates the Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States/Eighth Amendment, the laws of the United States and of the Commonwealth of Pennsylvania and was in violation of 42 U.S.C. § 1983.

67.     The Plaintiff believes and therefore avers, that at the time of the aforementioned incident, Defendants MHM/Wellpath, Inc.  knew or should have known of the above described policy and that it deliberately, knowingly, and/or negligently failed to take measures to stop or limit

the policy, including, inter alia, providing proper training, supervision, and control of the officers, agents, and/or employees.

68.     By failing to take action to stop or limit the policy and/or by remaining deliberately indifferent to the systematic abuses which occurred in accordance with and as a direct and proximate result of the policy, MHM/Wellpath, Inc. condoned, acquiesced in, participated in, and perpetrated the policy in violation of the Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States/Eighth Amendment of the Constitution of the Commonwealth of Pennsylvania, the Laws of the United States and of the Commonwealth of Pennsylvania, and was in violation of 42 U.S.C. § 1983.

69.     The Plaintiff believes and therefore avers that the Defendants HMH/Wellpath, Inc. have adopted and maintained for many years a recognized and accepted policy consisting of an inadequate system of review of claims of inadequate medical care and prior suicides, as well as complaints of unsupervised detainees and inmates, which system has failed to identify instances of deliberate indifference to serious medical needs or insure that arrestee, detainees and/or prisoners serious medical needs are being met.

**WHEREFORE**, pursuant to 42 U.S.C. § 1983 and § 1988, Plaintiff demands compensatory damages against Defendants MHM/Wellpath, Inc. jointly and/or severally, in an amount sufficient to fully and adequately compensate the Plaintiff, plus interest, costs, attorney's fees and all other appropriate relief.

<u>**COUNT IV- PENNSYLVANIA LAW**</u>
<u>**NEGLIGENCE**</u>
<u>**PLAINTIFF V. PA. DOC, HMH/WELLPATH, INC. AND**</u>
<u>**DR.'S JANE/JOHN DOE #'S 1-5**</u>

70.     All preceding paragraphs are fully incorporated herein by reference.

71.     At all times relevant hereto, Defendants Pa. DOC, MHM/Wellpath, Inc.and Dr.'s Jane/John Doe #'s 1-5 had a duty to comply with generally accepted medical standards of care in their treatment of the Plaintiff.

63.     Defendants, Pa. DOC, MHM/Wellpath, Inc.and Dr.'s Jane/John Doe #'s 1-5 violated their duty of care to the Plaintiff.

64.     The Defendants' violation of their duty of care to the Plaintiff was a direct and proximate cause and a substantial factor in bringing about Plaintiff's injuries and death, as set-forth above, and accordingly Defendants are liable to Plaintiff under Pennsylvania law.

**WHEREFORE**, pursuant to Pennsylvania law, Plaintiff demands compensatory damages, Defendants Pa. DOC, MHM/Wellpath, Inc.and Dr.'s Jane/John Doe #'s 1-5 jointly and/or severally, in an amount sufficient to fully and adequately compensate the Plaintiff, plus interest, costs, attorney's fees and all other appropriate relief.

ABRAMSON & DENENBERG, P.C.


BY: _s/Alan Denenberg_____
ALAN DENENBERG, ESQUIRE

**ABRAMSON & DENENBERG, P.C.**
**BY:  ALAN E. DENENBERG, ESQUIRE**
**IDENTIFICATION NO:  54161**
**1315 WALNUT STREET, SUITE 500**
**PHILADELPHIA, PA 19107**
**(215) 546-1345**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANIEL NEWBERG** | : | |
| | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff** | : | **NO. 2:22-cv-00304** |
| | : | |
| **v.** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **PENNSYLVANIA DEPARTMENT OF** | : | |
| **CORRECTIONS** | : | |

## CERTIFICATE OF SERVICE

I, Alan Denenberg, Esquire, hereby certify that on March 21, 2022, I served a true and

correct copy of Plaintiff's Amended Complaint on all counsel of record via the Court's Electronic

Filing System (PACER).

Date: March 21, 2022                                    __s/Alan Denenberg_____
                                                                      ALAN DENENBERG, ESQUIRE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DANIEL NEWBERG

vs.

PENNSYLVANIA DEPARTMENT OF
CORRECTIONS, et al.

NO. 2:22-cv-003404

## AFFIDAVIT OF WELLPATH, LLC

I, Tina L. McCullough, on behalf of Wellpath, LLC, hereby declare under penalty of perjury, pursuant to 25 U.S.C. § 1746, that the following statements are true and correct:

1.      I am currently employed by Wellpath, LLC as the Regional Manager of the Pennsylvania Regional Office, and am serving as the Acting Health Service Administrator at SCI-Phoenix. Accordingly, I am authorized to take this Affidavit on behalf of Wellpath, LLC.

2.      From September 1, 2014 to the present, Wellpath, LLC f/d/b/a Correct Care Solutions, LLC has been under contract with the Pennsylvania Department of Corrections to provide *medical* services to inmates at SCI-Phoenix.

3.      Wellpath, LLC, however, does not have any obligations under the contract to provide *mental health services*.

4.      Accordingly, Wellpath, LLC does *not*:

   a.   employ mental health providers at SCI-Phoenix;

   b.   prescribe and/or dictate mental health treatment to inmates at SCI-Phoenix;

   c.   provide mental health services to inmates at SCI-Phoenix; and/or

   d.   oversee the mental health care of inmates at SCI-Phoenix.



5.      Additionally, Wellpath, LLC has never employed the following individuals, who are identified in the Amended Complaint:

    a.  Jamie Sorber (Superintendent at SCI-Phoenix);

    b.  Jennifer Ward (health care provider at SCI- Phoenix);

    c.  Christine Stickney (health care provider at SCI- Phoenix);

    d.  J. Fernandez (health care provider at SCI- Phoenix);

    e.  Yueheng Han (health care provider at SCI- Phoenix);

6.      Furthermore, Wellpath, LLC does not employ any Registered Nurses ("RNs") or Licensed Practical Nurses ("LPNs") at SCI-Phoenix.

7.      Wellpath, LLC did, however, employ Dr. Stephen Wiener, and I am able to confirm the following:

    a.  Dr. Stephen Wiener was not a licensed psychiatrist;

    b.  Dr. Stephen Wiener did not provide mental health treatment to former DOC inmate, Daniel Newberg;

    c.  Dr. Stephen Wiener did not prescribe and/or dictate mental health treatment to inmates at SCI-Phoenix;

    d.  Dr. Stephen Wiener did not provide mental health services to inmates at SCI-Phoenix; and

    e.  Dr. Stephen Wiener did not oversee the mental health care of inmates at SCI-Phoenix.

8.      The undersigned verifies that the facts set forth in the foregoing Affidavit are true and correct to the best of her knowledge, information, and belief, and understands that any false

statements are made subject to the penalties of 25 U.S.C. § 1746 relating to unsworn falsification
to authorities.

_Inga McCullough_
TINA L. MCCULLOUGH

DATE: _3/25/2022_

**ABRAMSON & DENENBERG, P.C.**
**BY: ALAN E. DENENBERG, ESQUIRE**
**IDENTIFICATION NO: 54161**
**1315 WALNUT STREET, SUITE 500**
**PHILADELPHIA, PA 19107**
**(215) 546-1345**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DANIEL NEWBERG** | : |
| **Plaintiff** | : |
| | : |
| **v.** | : |
| | : |
| **PENNSYLVANIA DEPARTMENT OF** | : |
| **CORRECTIONS** et al. | : |
| **Defendants** | : |

## PRAECIPE TO ATTACH
## CERTIFICATE OF MERIT TO AMENDED COMPLAINT

**TO THE CLERK OF COURTS:**

Kindly attach the Certificate of Merit attached hereto to the Plaintiff's Amended Complaint.

RESPECTFULLY SUBMITTED,

BY: _s/Alan Denenberg_____
ALAN DENENBERG, ESQUIRE
ATTORNEY FOR PLAINTIFF



ABRAMSON & DENENBERG, P.C.
BY:  ALAN E. DENENBERG, ESQUIRE
IDENTIFICATION NO:  54161
1315 WALNUT STREET, SUITE 500
PHILADELPHIA, PA 19107
(215) 546-1345

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL NEWBERG | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 22-cv-00304 |
| PENNSYLVANIA DEPARTMENT | : | |
| OF CORRECTIONS, ET AL | : | |
| Defendants | | |

CERTIFICATE OF MERIT AS TO DEFENDANT PA. DEPT. CORRECTIONS

I, ALAN E. DENENBERG, ESQUIRE certify that:

[√]    an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this Defendant, in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

[√]    the claim that this Defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this Defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

[   ]   expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this Defendant.

**ABRAMSON & DENENBERG, PC**

Dated: 3/25/22                    BY: _____
                                        ALAN E. DENENBERG ESQUIRE
                                        Attorney for Plaintiff

2

**ABRAMSON & DENENBERG, P.C.**
**BY: ALAN E. DENENBERG, ESQUIRE**
**IDENTIFICATION NO: 54161**
**1315 WALNUT STREET,** SUITE 500
**PHILADELPHIA, PA 19107**
**(215) 546-1345**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DANIEL NEWBERG** | : |
| **Plaintiff** | : **CIVIL ACTION** |
| | : |
| **v.** | : |
| | : **No. 22-cv-00304** |
| **PENNSYLVANIA DEPARTMENT** | : |
| **OF CORRECTIONS, ET AL** | : |
| **Defendants** | |

### CERTIFICATE OF MERIT AS TO DEFENDANT JAMIE SORBER

I, ALAN E. DENENBERG, ESQUIRE certify that:

[√] an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this Defendant, in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

[√] the claim that this Defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this Defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

[   ]   expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this Defendant.

**ABRAMSON & DENENBERG, PC**

Dated: 3/25/22                    BY: _____

ALAN E. DENENBERG ESQUIRE
Attorney for Plaintiff

2

**ABRAMSON & DENENBERG, P.C.**
**BY:  ALAN E. DENENBERG, ESQUIRE**
**IDENTIFICATION NO:  54161**
**1315 WALNUT STREET, SUITE 500**
**PHILADELPHIA, PA 19107**
**(215) 546-1345**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **DANIEL NEWBERG** | : | |
| **Plaintiff** | : | **CIVIL ACTION** |
|  | : | |
| **v.** | : | |
|  | : | **No. 22-cv-00304** |
| **PENNSYLVANIA DEPARTMENT** | : | |
| **OF CORRECTIONS, ET AL** | : | |
| **Defendants** | | |

### CERTIFICATE OF MERIT AS TO DEFENDANT MHM SERVICES, INC

I, ALAN E. DENENBERG, ESQUIRE certify that:

[ ✓ ]    an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this Defendant, in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

[ ✓ ]    the claim that this Defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this Defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

[  ]   expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this Defendant.

**ABRAMSON & DENENBERG, PC**

Dated: 3/25/22          BY: _____
                            ALAN E. DENENBERG ESQUIRE
                            Attorney for Plaintiff

2

ABRAMSON & DENENBERG, P.C.
BY:  ALAN E. DENENBERG, ESQUIRE
IDENTIFICATION NO:  54161
1315 WALNUT STREET, SUITE 500
PHILADELPHIA, PA 19107
(215) 546-1345

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL NEWBERG | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | No. 22-cv-00304 |
| PENNSYLVANIA DEPARTMENT | : | |
| OF CORRECTIONS, ET AL | : | |
| Defendants | | |

CERTIFICATE OF MERIT AS TO DEFENDANT STEVEN WEINER MD

I, ALAN E. DENENBERG, ESQUIRE certify that:

[✓]    an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this Defendant, in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

[✓]    the claim that this Defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this Defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

[  ]   expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this Defendant.

**ABRAMSON & DENENBERG, PC**

Dated: 3/25/22 _____   BY: _____
ALAN E. DENENBERG, ESQUIRE
Attorney for Plaintiff

2

**ABRAMSON & DENENBERG, P.C.**
**BY: ALAN E. DENENBERG, ESQUIRE**
**IDENTIFICATION NO: 54161**
**1315 WALNUT STREET, SUITE 500**
**PHILADELPHIA, PA 19107**
**(215) 546-1345**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANIEL NEWBERG** | : | |
| **Plaintiff** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | **No. 22-cv-00304** |
| **PENNSYLVANIA DEPARTMENT** | : | |
| **OF CORRECTIONS, ET AL** | : | |
| **Defendants** | | |

**CERTIFICATE OF MERIT AS TO DEFENDANT WELLPATH, INC**

I, ALAN E. DENENBERG, ESQUIRE certify that:

[✓]  an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this Defendant, in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

[✓]  the claim that this Defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this Defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

[   ]   expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this Defendant.

**ABRAMSON & DENENBERG, PC**

Dated: 3/25/22                BY: _____
ALAN E. DENENBERG ESQUIRE
Attorney for Plaintiff

2

**ABRAMSON & DENENBERG, P.C.**
**BY:  ALAN E. DENENBERG, ESQUIRE**
**IDENTIFICATION NO:  54161**
**1315 WALNUT STREET,** SUITE 500
**PHILADELPHIA, PA 19107**
**(215) 546-1345**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **DANIEL NEWBERG** | : | |
| **Plaintiff** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | **No. 22-cv-00304** |
| **PENNSYLVANIA DEPARTMENT** | : | |
| **OF CORRECTIONS, ET AL** | : | |
| **Defendants** | | |

## CERTIFICATE OF MERIT AS TO DEFENDANT JENNIFER WARD

I, ALAN E. DENENBERG, ESQUIRE certify that:

[✓]  an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this Defendant, in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

[✓]  the claim that this Defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this Defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

[   ]   expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this Defendant.

**ABRAMSON & DENENBERG, PC**

Dated: 3/25/22

BY: _____

ALAN E. DENENBERG ESQUIRE
Attorney for Plaintiff

2

**ABRAMSON & DENENBERG, P.C.**
**BY:  ALAN E. DENENBERG, ESQUIRE**
**IDENTIFICATION NO:  54161**
**1315 WALNUT STREET,** SUITE 500
**PHILADELPHIA, PA 19107**
**(215) 546-1345**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DANIEL NEWBERG** | : |
| Plaintiff | :     **CIVIL ACTION** |
| | : |
| **v.** | : |
| | :     **No. 22-cv-00304** |
| **PENNSYLVANIA DEPARTMENT** | : |
| **OF CORRECTIONS, ET AL** | : |
| **Defendants** | |

## CERTIFICATE OF MERIT AS TO DEFENDANT CHRISTINE STICKNEY

I, ALAN E. DENENBERG, ESQUIRE certify that:

[✓]     an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this Defendant, in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

[✓]     the claim that this Defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this Defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

[   ]   expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this Defendant.

**ABRAMSON & DENENBERG, PC**

Dated: 3/25/22                    BY:

ALAN E. DENENBERG, ESQUIRE
Attorney for Plaintiff

**ABRAMSON & DENENBERG, P.C.**
**BY:  ALAN E. DENENBERG, ESQUIRE**
**IDENTIFICATION NO:  54161**
**1315 WALNUT STREET,** SUITE 500
**PHILADELPHIA, PA 19107**
**(215) 546-1345**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|                                                   |     |                     |
|---------------------------------------------------|-----|---------------------|
| **DANIEL NEWBERG**                                | :   |                     |
| **Plaintiff**                                     | :   | **CIVIL ACTION**    |
|                                                   | :   |                     |
| **v.**                                            | :   |                     |
|                                                   | :   | **No. 22-cv-00304** |
| **PENNSYLVANIA DEPARTMENT**                       | :   |                     |
| **OF CORRECTIONS, ET AL**                         | :   |                     |
| **Defendants**                                    |     |                     |

**CERTIFICATE OF MERIT AS TO DEFENDANT J. FERNADEZ**

I, ALAN E. DENENBERG, ESQUIRE certify that:

[✓]    an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this Defendant, in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

[✓]    the claim that this Defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this Defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

[   ]   expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this Defendant.

                                        **ABRAMSON & DENENBERG, PC**

Dated: 3/25/22                    BY: _____
                                        ALAN E. DENENBERG ESQUIRE
                                        Attorney for Plaintiff

**ABRAMSON & DENENBERG, P.C.**
**BY:  ALAN E. DENENBERG, ESQUIRE**
**IDENTIFICATION NO:  54161**
**1315 WALNUT STREET,** SUITE 500
**PHILADELPHIA, PA 19107**
**(215) 546-1345**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **DANIEL NEWBERG** | : | |
| **Plaintiff** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | **No. 22-cv-00304** |
| **PENNSYLVANIA DEPARTMENT** | : | |
| **OF CORRECTIONS, ET AL** | : | |
| **Defendants** | | |

**CERTIFICATE OF MERIT AS TO DEFENDANT YUEHENG HAN**

I, ALAN E. DENENBERG, ESQUIRE certify that:

[ ✓ ]   an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this Defendant, in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

[ ✓ ]   the claim that this Defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this Defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

[ ]   expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this Defendant.

**ABRAMSON & DENENBERG, PC**

Dated: 3/25/22                    BY: _____
                                      ALAN E. DENENBERG, ESQUIRE
                                      Attorney for Plaintiff

2

**ABRAMSON & DENENBERG, P.C.**
**BY:  ALAN E. DENENBERG, ESQUIRE**
**IDENTIFICATION NO:  54161**
**1315 WALNUT STREET,** SUITE 500
**PHILADELPHIA, PA 19107**
**(215) 546-1345**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **DANIEL NEWBERG** | : | |
| **Plaintiff** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | **No. 22-cv-00304** |
| **PENNSYLVANIA DEPARTMENT** | : | |
| **OF CORRECTIONS, ET AL** | : | |
| **Defendants** | | |

**<u>CERTIFICATE OF MERIT AS TO DEFENDANTS DR. JOHN/JANE DOES 1-5</u>**

I, ALAN E. DENENBERG, ESQUIRE certify that:

[ ✓ ] an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this Defendant, in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

[ ✓ ] the claim that this Defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this Defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

[   ]    expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this Defendant.

ABRAMSON & DENENBERG, PC

Dated: 3/25/22                    BY:

ALAN E. DENENBERG ESQUIRE
Attorney for Plaintiff

2

**ABRAMSON & DENENBERG, P.C.**
**BY:  ALAN E. DENENBERG, ESQUIRE**
**IDENTIFICATION NO:  54161**
**1315 WALNUT STREET,** SUITE 500
**PHILADELPHIA, PA 19107**
**(215) 546-1345**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DANIEL NEWBERG** | : | |
| **Plaintiff** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | **No. 22-cv-00304** |
| **PENNSYLVANIA DEPARTMENT** | : | |
| **OF CORRECTIONS, ET AL** | : | |
| **Defendants** | | |

**CERTIFICATE OF MERIT AS TO DEFENDANTS NURSES JOHN/JANE DOES 1-15**

I, ALAN E. DENENBERG, ESQUIRE certify that:

[√] an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by this Defendant, in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

AND/OR

[√] the claim that this Defendant deviated from an acceptable professional standard is based on allegations that other licensed professionals for whom this Defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has supplied a written statement to the undersigned that there is a basis to conclude that the care, skill or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm;

OR

[  ]   expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim against this Defendant.

ABRAMSON & DENENBERG, PC

Dated: 3/25/22                BY: _____
                                    ALAN E. DENENBERG ESQUIRE
                                    Attorney for Plaintiff

2