IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL NEWBERG, | : | |
| Plaintiff, | : | Civil Action |
| | : | |
| v. | : | No. 22-cv-0304-JMY |
| | : | |
| PENNSYLVANIA DEPARTMENT OF | : | |
| CORRECTIONS, *et al.*, | : | |
| Defendants. | : | |

**MEMORANDUM**

**Younge, J.**                                                                                          **July 2, 2025**

## I.    INTRODUCTION:

Currently before this Court is Defendants Christine Stickney and Jennifer Fernandez's

Motion for Summary Judgment (ECF No. 77).  The Court finds this Motion appropriate for

resolution without oral argument.  Fed. R. Civ. P. 78; L.R. 7.1(f).  For the reasons set forth in this

Memorandum, this Motion is Denied.

## II.    FACTUAL BACKGROUND:

Plaintiff, Daniel Newberg, was jailed following a conviction for Child Pornography.

(Initial Reception Metal Health Questionary ("Form DC-560A"), Motion for Summary

Judgement, Exhibit C, ECF No. 77-4.)  Plaintiff has a history of behavioral health issues including

bipolar disorder, depression, and prior suicide attempts.  (Amended Complaint, "Am. Compl." ¶

27, ECF No. 7.)  Plaintiff was previously prescribed Lexapro, Wellbutrin, and Seroquel to treat

these behavioral health issues.  (*Id*.)  On January 14, 2020, Plaintiff was sent to George Hill

Correctional Facility where he was prescribed Lexapro and Wellbutrin, not Seroquel. (*Id.* ¶ 28.)

On January 17, 2020, Plaintiff was transferred into Department of Corrections (DOC) custody at

SCI Phoenix. (*Id.* ¶ 29.)

When Plaintiff arrived SCI Phoenix, Defendant Stickney was the Psychological Services Specialist who performed Plaintiff's intake interview and filled out a Pennsylvania DOC form DC-560A. (Plaintiff's Statement of Disputed Material Facts, "SDMF" ¶ 5-6, ECF No. 89-2.) During intake, Plaintiff informed Defendant Stickney that he was incarcerated for child pornography, had been taking three psychotropic medications for the past ten years, was feeling down, depressed, or anxious, his medications were helping, and he last received medications the day before on January 16, 2020. (*Id*. ¶ 7.) Plaintiff also informed Defendant Stickney that he had a history of depression and suicide attempts, and that the last time he went off his medications two years ago, he was hospitalized after attempting suicide. (*Id*.) During intake, Defendant Stickney noted that "referral would be appropriate" for further psychiatric evaluation. (*Id*. ¶ 14.) Plaintiff was then informed that he could not get medications without meeting with the prison psychiatrist. (Am. Compl. ¶ 32.) Plaintiff requested an immediate appointment with the prison psychiatrist but was told it would be days before he could meet with the psychiatrist for his medications. (*Id*. ¶ 33.)

On January 23, 2020, Plaintiff met with Defendant Fernandez. (SDMF ¶ 17.) Defendant Fernandez reviewed Defendant Stickney's DC-560A form (including Plaintiff's need for medication and history of suicidality when off medication) and recorded this meeting in a DOC form DC-560 and in an Individual Recovery Plan. (*Id*. ¶ 18-20.) Defendant Fernandez recorded that Plaintiff's top personal goal was to "get back on . . . medication." (*Id*. ¶ 21.) Following Plaintiff's filing of this suit, Plaintiff brought forth the expert reports of Sanjay Adhia, M.D. and John G. Peters, Kr. Ph.D. (*Dr. Adhia Expert Report* ("Exhibit A"), Response in Opposition to Summary Judgment, Exhibit A, ECF No. 89-4; *John G. Peters Expert Report* ("Exhibit B"), Response in Opposition, Exhibit B, ECF No. 89-5.) Both experts opine that Defendants Stickney and Fernandez ignored key warning signs that Plaintiff was at significant increased risk for suicide.

2

(Exhibit A at 379; Exhibit B at 8.)  Dr. Peters analyzed Defendant's Stickney's DC-560A in conjunction with authoritative studies on prison suicide risks.  (Exhibit B at 14-15).  He concludes that Plaintiff's intake interview showed "several high-risk suicidal variables that were not acted upon in a timely manner, which was a material cause of his attempted suicide in jail." (*Id.* at 14).

Following intake, Plaintiff was assigned to be housed in general population.  (Am. Compl. ¶ 37.)  While on his block, Plaintiff informed corrections officers on a nightly basis that he needed to see the doctor because he was bipolar and needed his medicine, and that he was becoming suicidal. (*Id.* ¶ 36.)  Plaintiff also informed unknown medical or mental health personnel who visited the block, possibly including Defendant Stickney and/or Fernandez, that his condition was getting worse and he needed to see the Doctor to get his medication because he was becoming suicidal. (*Id.* ¶ 40.)  On January 23, 2020, the same day he met with Defendant Fernandez and six days after Plaintiff entered SCI-Phoenix, Plaintiff attempted to commit suicide by jumping off the second-floor tier of the block onto the concrete first floor.  (*Id.* ¶ 45.)  At that time, Plaintiff had not yet been seen by the prison psychiatrist.  (*Id.* ¶ 43.)  Plaintiff suffered serious injury from the incident, including multiple broken bones.  (*Id.* ¶ 46.)  He now brings this personal injury action against the aforementioned Defendants.

## III.    LEGAL STANDARD:

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012).  To defeat a motion for summary judgment, there must be a factual dispute that is both material and genuine.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 24-49 (1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008).  A material fact is one that "might affect the outcome of the suit

3

under the governing law". *Anderson*, 477 U.S. at 248. A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Id.*

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). When the movant is the defendant, they have the burden of demonstrating that the plaintiff "has failed to establish one or more essential elements of her case." *Burton v. Teleflex Inc.,* 707 F.3d 417, 425 (3d Cir. 2013). If the movant sustains their initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal quotations omitted) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At the summary judgment stage, the court's role is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249; *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001). Nonetheless, the court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

IV.   **DISCUSSION:**

There is a genuine dispute about the material facts in this case that preclude the Court from entering summary judgment in favor of Defendants. There is genuine dispute as to whether Plaintiff posed a "strong likelihood" of being vulnerable to attempting suicide in the days after he arrived at SCI Phoenix. There is also a genuine dispute as to whether Defendants were aware of

Plaintiff's potential risk for attempting suicide and the necessity to intervene to prevent Plaintiff from injuring himself.

### A.    A Jury Should Decide Whether or Not Defendants Violated Plaintiff's Eighth Amendment Rights:

The Constitution prohibits cruel and unusual punishment.  U.S. CONST. amend. VIII. With the understanding that inmates are subject to such protection, "if [custodial] officials know or should know of the particular vulnerability to suicide of an inmate, then the Fourteenth Amendment imposes on them an obligation not to act with reckless indifference to that vulnerability." *Colburn v. Upper Darby Township*, 838 F.2d 663, 669 (3d Cir. 1988). (hereinafter, "*Colburn I*").  Prison administrators are "under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526-37 (1984). In *Hudson*, the Court specifically cited to the "over 125 suicides in [state and federal prisons]" that occurred in 1981 through the first half of 1982.  The Court opined that these 125 suicides were a safety concern that prison administrators should be taking reasonable measures to prevent.  *Id.* at 526.  Thus, "just as a failure to act to save a detainee from suffering from gangrene might violate the duty to provide reasonable medical care absent an intervening legitimate government objective, failure to take any steps to save a suicidal detainee from injuring himself may also constitute a due process violation." *Colburn I*, 838 F.2d at 669.  "[D]eliberate indifference to detainees' suicidal tendencies . . . will support [a claim of] section 1983 liability." *Id.*

In cases alleging Constitutional violations for a prison suicide, the plaintiff has the burden to prove three elements: "(1) the detainee had a 'particular vulnerability to suicide,' (2) the custodial officer or officers knew or should have known of that vulnerability, and (3) those officers 'acted with reckless indifference' to the detainee's particular vulnerability."  *Colburn v. Upper*

*Darby Township*, 946 F.2d 1017, 1023 (3d Cir. 1991) (hereinafter, "*Colburn II*").[1]  Defendants are

correct that "the requirement of 'reckless or deliberate indifference' implies that there must be 'a

strong likelihood, rather than a mere possibility, that self-inflicted harm will occur.'"  *Id.* at 1024

(quoting *Torraco v. Maloney*, 923 F.2d 231, 236 (1st Cir. 1991)).  "Even where a strong likelihood

of suicide exists, it must be shown that the custodial officials 'knew or should have known' of that

strong likelihood." *Colburn II*, 936 F.2d at 1024.  The standard for "should have known" entails

that the "'strong likelihood' of suicide must be 'so obvious that a lay person would easily recognize

the necessity for' preventative action." *Id.* at 1025 (quoting *Monmouth County Correctional*

*Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).

While the standard to establish Defendants' liability is high, a reasonable juror could find

that Plaintiff presented with risk factors that posed a strong likelihood that he would attempt to

commit suicide; therefore, a jury could find liability based on Defendants' failure to ensure that

Plaintiff received his medication.  Both Parties agree that Plaintiff posed a myriad of potential risk

factors: incarceration for child pornography, a history of depression and suicide attempts, feelings

of depression and anxiety that his medications were helping, a previous suicide attempt after going

off of his medications two years prior to his incarceration, and a prior hospitalization for that

suicide attempt.  (SDMF ¶ 7.)  Both Parties agree that prior to incarceration, Plaintiff was taking

three prescribed psychotropic medications.  *Id.*  Both parties agree that "[c]hanging or stopping

medications" is at least a warning sign of potential concern for suicide.  *Id.* ¶ 10.

---

[1] After the Third Circuit's decision in *Colburn II* in 1991, the Supreme Court of the United States filed an Opinion in *Farmer v. Brennan* where the Court stated that a prison official could not be found deliberately indifferent under the Eight Amendment unless the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." 511 U.S. 825, 837 (1994).  Where *Colburn II* employs a "knew or should have known" standard, *Farmer* requires actual knowledge.  The result has led to a conflict which is discussed in the Third Circuit Model Civil Jury Instruction 4.11.2 (2024).  This Court declines to resolve any conflicting language in the model jury instruction at this stage in the litigation and will reserve resolution of this conflict for a later point in time – such as during the charging conference.

A reasonable juror could find that a history of suicide attempts indicates a strong likelihood of suicide. Further, a reasonable jury could find that Plaintiff's statement his medications were helping his depression and anxiety indicates a necessity to maintain Plaintiff's medications to prevent suicide. Even if Plaintiff was presenting normally during his intake interview, a reasonable juror could draw the inference that Plaintiff was presenting normally because he had received a dosage of his medications the day before. A reasonable juror could conclude that without those medications, Plaintiff would no longer present normally.

This case is distinct from *Colburn II* where the defendants were granted summary judgment because, in the reasoning of the Court, there was insufficient evidence to establish that a lay person would have recognized that decedent posed a strong likelihood of suicide. 936 F.2d at 1027. In *Colburn II*, the defendants were only aware that the decedent was intoxicated, fighting with her boyfriend, tried to ingest pills, and had a bullet in her pocket, so that knowledge was insufficient to indicate a strong likelihood of suicide. 936 F.2d at 1026. The obvious link to suicide risk is significantly stronger in the case *sub judice* than in *Colburn II*. Rather than general evidence of substance abuse or possession of dangerous instrumentalities or an argument with a romantic partner, Plaintiff had a history of previously attempting suicide and a subsequent hospitalization connected to discontinued use of his medications. The evidence pointing to a strong likelihood of suicide is suicide-specific, not solely a few generalized risk factors (although Plaintiff also indicated generalized risk factors as well). A reasonable jury could find that Defendants were aware of Plaintiff's vulnerability and should have recognized that continuing a course of treatment to prevent suicidality was a necessary intervention for someone like Plaintiff who had previously attempted suicide when his medication was discontinued. Summary judgment is inappropriate here because a reasonable jury could find in favor of Plaintiff.

7

**B.    Qualified Immunity Does Not Preclude Liability Because Plaintiff's Rights Were Well-Established:**

The application of qualified immunity is inapplicable because Plaintiff had a clearly established Constitutional right to protection from his alleged vulnerability to suicide.  Qualified immunity exists as a doctrine so that "government officials performing discretionary functions, generally are shielded from liability for civil damages." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  However, the doctrine does not grant unlimited discretion to governmental officials. "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Qualified immunity does not preclude liability if the "official's conduct violated a clearly established constitutional right."  *Id.* at 232.  To evaluate if qualified immunity precludes liability, there is a two-step inquiry: (1) if taken "in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right," and (2) "whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Courts can examine either prong of the *Saucier* test first.  *Pearson*, 555 U.S. at 815-16.

Here, there is an established Constitutional right to be protected from a vulnerability to suicide, and a reasonable jury could find that Defendants' conduct violated that Constitutional right to such protection.  Starting with the analysis of whether the right is clearly established, it is important to determine if "existing precedent [has] placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).  Here, Supreme Court and Third Circuit precedent indeed clearly establishes the right against deliberate indifference to inmates' vulnerability to suicide.  The Supreme Court has determined that prisons are obligated to take

8

reasonable safety precautions. *Hudson*, 468 U.S. at 526. These safety precautions include suicide prevention processes. *Id*. Inmates have an Eighth Amendment right to be protected from acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).

The Third Circuit has specified that deliberate indifference to an inmate's risk of suicidality constitutes such a violation of Constitutional rights to bring forth a Section 1983 claim. *Colburn I*, 338 F.2d at 668-69. If prison officials "know or should know of the particular vulnerability to suicide of an inmate, then the Fourteenth Amendment imposes on them an obligation not to act with reckless indifference to that vulnerability." *Id.* at 669; *see also Palakovic v. Wetzel*, 854 F.3d 209, 222 (3d Cir. 2017) (reaffirming that prisons have a Fourteenth Amendment obligation to protect inmates from vulnerability to suicide, which also applies to pre-trial detainees). Here, the exact Constitutional right at issue is Plaintiff's right to protection from his vulnerability to suicide. If the jury were to find there was a strong likelihood that Plaintiff would attempt suicide, the Plaintiff had an Eighth and Fourteenth Amendment right to protection against that vulnerability, and deliberate indifference towards that vulnerability would constitute a Constitutional Violation. Thus, the Constitutional right in question is clearly established.

After determining that the Constitutional right is clearly established, the question becomes whether Plaintiff's allegations indicate Defendants' conduct amounted to a violation of that right. As previously discussed hereinabove, a reasonable jury could find that Defendants' failure to treat Plaintiff's alleged predisposition to attempt suicide constituted a violation of Plaintiff's clearly established right to protection against vulnerability to suicide. Therefore, the debate between the Parties then returns to the earlier discussion about Defendants' violation of Plaintiff's Eighth Amendment rights hereinabove in subsection A because the inquiry is identical. *See Owens v.*

*City of Philadelphia*, 6 F. Supp. 2d 373, 384 (E.D. Pa. 1998) ("To overcome the specific conduct prong of a qualified immunity defense in prison suicide cases, the plaintiff's facts are sufficient if they are "clearly alleged, and provided evidence of, a constitutional deprivation sufficient to meet their burden.").

As established above, the Plaintiff has met his burden for a recognizable allegation of Constitutional deprivation.  Based on the facts Plaintiff alleges, a reasonable jury could find in favor of Plaintiff that (1) his risk factors indicated a strong likelihood of suicide, (2) Defendants should have known those risk factors shared during the intake process indicated a strong likelihood of suicide, and (3) Defendants' choice to not take further action to continue Plaintiff's medications amounted to reckless or deliberate indifference.  Taking the facts in the light most favorable to the Plaintiff, if a reasonable jury could find that Plaintiff had a strong likelihood of suicide and that disallowing Plaintiff's medications amounted to deliberate indifference to Plaintiff's particular vulnerability to suicide.  Thus, a reasonable jury could find that Defendants' conduct violated Plaintiff's clearly established Eighth Amendment right to protection from vulnerability to suicide, so qualified immunity does not apply.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Christine Stickney and Jennifer Fernandez's Motion for Summary Judgment is Denied.  An appropriate Order will follow.


BY THE COURT:

/s/ John Milton Younge
**Judge John Milton Younge**


10